EDWARD K. WILLARD and Others, Respondents, *v.* HAMILTON S. WHITE and GILES EVERSON, Appellants, Impleaded with EDWARD N. WESTCOTT and Others.

*Stocks purchased upon a margin — right of a New York broker, purchasing for a firm of brokers at Syracuse, to hold the stocks purchased for particular customers of the latter as a general collateral for the latter's indebtedness — better equity of one who deposits stock, as a margin.*

A firm of stock-brokers in the city of New York were the correspondents of a firm of stock-brokers doing business in Syracuse, and were accustomed to fill orders given by the latter firm to buy stocks. These stocks were, in fact, purchased for customers of the Syracuse firm, but the orders for their purchase did not inform the New York brokers for what purpose the purchases were made. The New York brokers held margins to protect them in the advances which they made on the purchases of stocks, the margin being represented by money and securities. They also held the securities purchased by them, rendering monthly statements as to the condition of the account against the Syracuse firm. The Syracuse firm having failed an action was brought by the New York brokers, in equity, to determine the rights of the customers of said insolvent firm in the margins held by the plaintiffs. Subsequent to the failure, the New York brokers, in order to reimburse themselves for advances made, sold a large number of stocks standing to the credit of the Syracuse firm, which had, in fact, been purchased or were held by that firm for

its customers, leaving a portion of such stocks which were represented by such account unsold, and a portion of their claim against the Syracuse firm unpaid.

*Held,* that the customers of the Syracuse firm, upon making a tender to it of the balance due upon the purchase of their particular stocks (after deducting the amount which had been paid by such customers, at the time of their purchase), were not entitled, as against the New York brokers, to the stocks which had been pledged with that firm as a general collateral to secure its account for advances with the Syracuse firm.

That the surplus remaining in the hands of the New York brokers, after the payment of their claim against the Syracuse firm, from the proceeds of the sale of these stocks, properly belonged, not to the assignee of the Syracuse firm, but to the parties on whose behalf these stocks had been purchased.

That the right of the New York brokers to make good the indebtedness of the Syracuse firm to it, out of those securities purchased by order of the Syracuse firm for its customers, was not affected by the general knowledge on the part of the New York brokers that orders made by the Syracuse firm for the purchase of stock were made on behalf of other persons; and they had a right to look to the Syracuse firm for the payment of the account, and to hold the securities received from that firm as security therefor.

That the owner of stock which had been pledged by him with the Syracuse firm as collateral to purchases made through the New York brokers, and which had been improperly placed by the Syracuse firm with the New York brokers as a general collateral to secure the account of the former, had a better equity than those customers for whom stocks had been purchased on a margin through the New York brokers, which were also held by the New York brokers as a general collateral to the indebtedness of the Syracuse firm.

That the New York brokers were in no sense trustees for the Syracuse firm, nor were they entitled to be paid counsel fees, incurred in the equity suit brought by them, under any theory that they were acting as trustees and protecting the rights of their *cestui que trust* in this action.

*Griggs* v. *Howe* (2 Abb. Ct. of App., 291) distinguished.

That they had no right to insist that the collaterals held by them, in addition to paying the claim existing in their favor against the Syracuse firm, should also pay the expenses involved in determining the amount of that claim.

APPEAL by several of the defendants above named from a judgment entered in the office of the clerk of the county of New York on the 24th day of July, 1886, after a trial before a referee, who found that the plaintiff was entitled to judgment; that the defendants Edward N. Westcott and Alfred Wilkinson, as copartners, composing the firm of Westcott & Co., are indebted to these plaintiffs in the total sum of $10,414, with interest thereon at the rate of six per cent from the 10th day of April, 1886; and that the plaintiffs are entitled to hold the following stocks and securities, therefor, pledged with them by said Westcott & Co or the avails

of the sales thereof, for the payment of the same, to wit: Three $1,000 six per cent first mortgage bonds of the Lafayette, Bloomington and Muncie Railroad Company; one hundred shares of the capital stock of the Chesapeake and Ohio Railway Company, first preferred; one hundred and twenty shares of the capital stock of the Chicago, Rock Island and Pacific Railway Company, and any and all dividends that may have been collected thereon, as well as all other dividends received by them to the credit of said Westcott & Co., since the 11th day of December, 1884.

That the plaintiffs are entitled to the judgment of this court directing the sale of the following of said securities at public auction, upon ten days' notice to all the parties who have appeared in this action, and upon two advertisements, one to be inserted in the New York World, and the other in the Daily Register, in the city of New York, by A. J. Bleecker, Son & Co., auctioneers, at the Exchange Auction Rooms (Limited), 59 to 65 Liberty street, in the city of New York, to wit: The one hundred shares of the capital stock of the Chesapeake and Ohio Railway Company, first preferred; one hundred and twenty shares of the capital stock of the Chicago, Rock Island and Pacific Railway Company; three $1,000 six per cent first mortgage bonds of the Lafayette, Bloomington and Muncie Railway Company.

That the plaintiffs are entitled to judgment that they receive and be paid out of the net proceeds of the sales of the said securities the said sum of $10,414, with interest thereon at six per cent since the 10th day of April, 1886, together with their reasonable expenses, charges and disbursements herein since the 8th day of January, 1886, including the expenses of this reference and the fees of the referee, and taxable costs and disbursements in this action.

That the defendant James S. Crouse is entitled to receive, and to the judgment of this court directing the plaintiffs to pay over to him as assignee of the firm of Westcott & Co., all surplus moneys resulting from the sales above directed to be made after payment therefrom of the lawful expenses of such sales, and the sums above allowed to the plaintiffs.

That the defendants James R. Lockwood Henry R. Lockwood and Mary M. Armstrong, as executors of the last will and testament of Henry Lockwood, deceased, are entitled to receive, and to the judg-

ment of this court directing the plaintiffs to deliver to them, or to their attorneys, seventy-seven shares of the capital stock of the Burlington, Cedar Rapids and Northern Railway Company, so indorsed as to render such delivery effective.

That the defendant Van Marter is entitled to receive, and to the judgment of this court directing the plaintiffs to deliver to him, or to his attorney, thirty shares of the capital stock of the American Express Company.

That the defendant William Van Marter is entitled to judgment against the defendants Edward N. Westcott and Alfred Wilkinson, for the sum of $744.46, besides costs and disbursements of this action.

That no other of the parties hereto are entitled to any relief in this action.

*Frank H. Hiscock,* for the appellants White & Everson.

*W. G. Tracy,* for the appellant Moses.

*T. D. Kenneson* and *H. A. Root,* for the plaintiffs respondents.

*L. Marshall,* for the defendant respondent Krouse.

VAN BRUNT, P. J. :

The evidence in this case showed that the plaintiffs for many years prior to the 11th of December, 1884, had been stock-brokers doing business in New York under the firm name of E. K. Willard & Co., and that the defendants Westcott & Wilkinson were at the time of the transactions hereinafter mentioned and for some time previous thereto had been copartners and also stock-brokers, doing business at Syracuse, N. Y., under the firm name of Westcott & Co.

Westcott & Co. had been in the habit of receiving, from their customers in or about Syracuse, orders for the purchase of stocks. These orders Westcott & Co. filled by directing the plaintiffs Willard & Co. to buy the stocks. The plaintiffs in their transactions with Westcott & Co. kept their account with them and with them only, and knew no other persons in connection therewith. Westcott & Co. in giving these orders to purchase stock did not inform the plaintiffs for whom these purchases were made, and they were made by the plaintiffs for and on account of Westcott & Co. The plaintiffs required ample margin to cover the advances which

they made in money in the purchase of stocks ordered by Westcott, for which they received remittances of money and of securities, and also held the securities purchased. The plaintiffs made up monthly balances and sent them to Westcott & Co. as to the condition of their account. These statements contained all the items of transactions between the plaintiffs and Westcott & Co.

In October, 1884, the defendant Everson had ordered Westcott & Co. to purchase for him one hundred shares of the Chicago, Rock Island and Pacific Railroad stock, paying to them the sum of $3,755.47, which Westcott & Co. were to hold as a margin upon the purchase. Westcott & Co. directed the plaintiffs to purchase this stock which they ·did for the sum of $11,231.25, and they placed the stock in the account of Westcott & Co., crediting them with it on their books and debiting them with the price. This stock has ever since been continuously held by the plaintiffs in said account to the credit of Westcott & Co.

In like manner, on the 11th of August, 1884, the defendant White had ordered Westcott to purchase for him three of the first mortgage $1,000 bonds of the Lafayette, Bloomington and Muncie Railroad, and at the time of such purchase had in the hands of Westcott & Co. $1,265.90 as a margin upon said purchase. Westcott & Co. directed the plaintiffs to purchase these bonds, which was done at the price of $2,448, in the same manner as in the previous case, and the plaintiffs have ever since held said bonds. All of these stocks were purchased upon margin and were never paid for by the parties for whose account they were purchased, and none of the certificates were ever transferred to them or to Westcott & Co., Willard & Co. holding the same as security for the indebtedness of Westcott & Co. to them.

On the 11th of December, 1884, Westcott & Co. failed and made an assignment for the benefit of creditors to the defendant Krouse. The defendants White & Everson, after the failure and before the commencement of this action, demanded of the plaintiffs the amount so paid by them on their respective purchases, and upon refusal thereof demanded of the plaintiffs their respective purchases, at the same time tendering the amount of the purchase-price thereof unpaid, which was refused, the plaintiffs disclaiming any knowledge

of the defendants White & Everson in this transaction, and claiming Westcott & Co. as their principals, who were largely indebted to them.

It further appeared that, at the time of the failure of Westcott & Co. they had purchased through the plaintiffs for account of the defendant Moses 200 shares of North-western stock, 100 shares of Lake Shore stock and some Erie stock, and were carrying the same for said Moses upon margins, and that to secure Westcott & Co., Moses had pledged to them 100 shares of Lake Shore stock owned by him, and that before the failure of Westcott & Co., and without the authority of Moses, or his knowledge or consent, Westcott & Co. had repledged said 100 shares of stock owned by Moses, with other stocks, to the plaintiffs as security for a general balance of account, amounting to over $100,000. It further appeared that, subsequent to the failure, the plaintiffs, to reimburse themselves for the advances made by them, sold a large number of stocks standing to the credit of Westcott & Co., among which was the stock belonging to the defendant Moses, both that which Westcott & Co. had purchased for his account and the 100 shares of Lake Shore stock which Moses had pledged as margin. And it further appeared that the proceeds of the sale of said stock, with the dividend collected thereon, amounted to $3,690 over and above the indebtedness of Moses to Westcott & Co. It further appeared that by the sale of the stocks aforesaid the plaintiffs had repaid themselves all but $8,865.79. They still held the 100 shares of Chicago and Rock Island stock, bought by the plaintiffs upon the order of Westcott & Co., and which the defendant Everson had directed Westcott & Co. to buy, and also the $3,000 first-mortgage bonds bought by the plaintiffs for Westcott & Co., and which the defendant White had requested Westcott & Co. to purchase; also twenty shares of Rock Island stock claimed by the defendant Tracey, and 100 shares of Chesapeake and Ohio Railway stock. The total value of these stocks, exclusive of interest and dividends, on the 15th of December, 1884, was about $16,000. There being various claimants for these stocks the plaintiffs filed this bill to determine the rights and interests of the parties; and a referenee being had, upon the foregoing facts, the referee adjudged that the stock remaining in the hands of the plaintiffs should be sold, and that the plaintiffs should

repay themselves out of the proceeds thereof the sum of $10,414, with interest, included in which amount was the sum of $2,504.85 counsel fees and disbursements, which the plaintiffs claimed had been paid to their counsel in examining the claims of the various parties and conducting the present litigation; and, further, that the plaintiff should pay over to the assignee of Westcott & Co. all surplus moneys resulting from the sales above directed to be made, after payment therefrom of the lawful expenses of such sale, and deducting the above amount that the plaintiffs are directed to retain therefrom to their own use; and, also, that the plaintiffs should deliver to certain defendants therein named certain other stocks which they had on hand, and from the judgment thereupon entered the defendants White, Everson and Moses have appealed.

It is claimed upon the part of the defendants White & Everson that Westcott & Co were their agents, and as to their stocks, trustees, and Willard & Co. held them subject to the same rights, and that White & Everson were entitled to have their securities at any time upon demand, and upon payment of the balance of the purchase-price, and that Westcott & Co. were guilty of wrongful conversion in depositing or leaving them with the plaintiffs as security for future advances.

Upon the part of the defendant Moses it is claimed that he has a superior right to this fund over any of the other defendants to the amount of $3,691, and interest (being the proceeds of sale of his 100 shares of stock deposited with Westcott & Co., and which they pledged with the plaintiffs), over and above the indebtedness due from Moses to Westcott & Co.

It seems to us to be entirely clear that the referee erred in holding that the surplus of these sales should be paid to the assignee. He was not a purchaser for value, and he had no right to take any more than Westcott & Co. could themselves have taken if they had not made the assignment. These parties having traced their security or securities, which had been bought upon their account, into the hands of the plaintiffs, were at least entitled to receive from the plaintiffs whatever balance might remain after paying the indebtedness for which they were pledged.

It is true that the plaintiffs had the right to hold these securities for the purpose of the payment of the balance due to them from

Westcott & Co. They knew nothing of the rights or interests of these various parties, and these were negotiable securities which they held for value, and, consequently, they were entitled to reimburse themselves before they could be compelled to deliver up these securities which had been deposited with them as margin. The fact that Westcott & Co. had received part payment from White & Everson upon the purchase of these stocks in no manner affected the rights of the plaintiffs. They knew nothing in respect to this payment. They were dealing entirely with Westcott & Co., and they were holding these securities as the property of Westcott & Co., as security for the indebtedness due from Westcott & Co. to them. Under these circumstances it is clear that the plaintiffs had the right to hold these securities until their indebtedness from Westcott & Co. should be paid. It is urged that the plaintiffs must have known that Westcott & Co. were acting for other people. It may be true that they knew that Westcott & Co. were giving these orders for the purchase of stock on behalf of other people. But what other people, or who they were, or whether, in fact, Westcott & Co. were operating on their own account they had no means of knowing and no reason to surmise. They were dealing with Westcott & Co., and with them alone, and they looked to Westcott & Co. for the payment of their account, and held these securities received from Westcott & Co. as security therefor.

As to the defendant Moses, in respect to the 100 shares of Lake Shore stock pledged by him with Westcott & Co., it seems to us that he stands in a different position from that occupied by White & Everson. White & Everson knew, in fact all these parties knew, that Westcott & Co. were executing these orders through correspondents in New York, but whether Westcott & Co. were themselves carrying the stocks after they were purchased, or their correspondents, they did not know; and when the defendant Moses deposited this 100 shares of Lake Shore stock with Westcott & Co., as an additional margin, he by no means conferred upon Westcott & Co. any title further than such as was necessary to secure the indebtedness of Moses to them, and, therefore, as the referee has found, the pledge by Westcott & Co. of this 100 shares deposited with them as collateral to the plaintiffs was wrongful; and he having traced that stock into the hands of the plaintiffs, it would seem that

he is entitled to receive whatever excess might arise from the sales of the stock over and above the indebtedness due from him to Westcott & Co., provided the debt to the plaintiffs was satisfied. In other words, his equity seems to be greater than the equity of those parties who gave the orders for the purchase of these stocks with the expectation that money should be raised by the pledge of these stocks to pay for the same. This 100 shares of the defendant Moses was his own property apparently which he had paid for, and which in no manner formed the subject of the speculation which was being carried on in the purchase of these stocks. We think, therefore, that his equity is superior to that of the other parties, and that he should be paid the surplus arising from the sale of these 100 shares of stock before any sum should be received by the alleged owners of the other securities involved in this appeal.

We think also that the referee erred in the allowance made for counsel fees and disbursements.

It is sought to sustain this claim upon the ground that the plaintiffs were in some sense acting as the trustees of Westcott & Co., and that their counsel fees paid in protecting their interests as trustees were a proper charge against the *cestui que trust*. But we think that this relation in no way existed between the plaintiffs and Westcott & Co. The sole position which the plaintiffs occupied towards Westcott & Co. was that of creditors with security for the payment of their debt, and this idea that they were trustees in any way does not seem to have any foundation in the facts, any more than every creditor holding security for his debt is a trustee of the debtor. The plaintiffs may have thought it prudent to file this bill in order to have the rights of the parties determined, but it was not necessary. They could have gone on and sold these securities and paid their debt without the intervention of this litigation, and that is, in fact, what they did in respect to a large part of the securities which they held. They sold securities sufficient to pay every dollar of debt which they felt certain Westcott & Co. were bound to pay to them; and it was only in respect to a claim in regard to the payment whereof there might be some doubt as to their right to hold these securities that they sought the intervention of the court. Some authorities have been cited for the purpose of sustaining the decision of the referee in this respect, but they do not seem to be applicable.

The case of *Griggs* v. *Howe* (2 Abb. Ct. of App., 291) presents an entirely different state of facts. There the holder of the security was compelled to sue upon it in order to collect it, and was compelled to incur expense in realizing upon the collateral, and which he was allowed to charge as expenses.

In the case at bar the plaintiffs were under no difficulty in realizing upon their claim. All they had to do was to sell upon proper notice, and the only question seems to have been as to the amount which they could claim against Westcott & Co. as an indebtedness for which they held these securities as collateral. In other words, they proposed to make the collaterals pay the expense of determining the amount of their own claims. This we do not think any of the cases cited permit, and, therefore, the allowance of these counsel fees was erroneous.

It seems to us, therefore, that the judgment appealed from should be reversed and a new trial ordered, with costs to the appellants to abide the event.

BARRETT and BARTLETT, JJ., concurred.

Judgment reversed and new trial ordered, with costs to the appellants to abide event.