(7 Misc. Rep. 323.)

## TIMPSON v. ALLEN et al.

(Common Pleas of New York City and County, General Term. February 28, 1894.)

PRINCIPAL AND AGENT—PROOF OF AGENCY.

In an action against a broker for an accounting, it appeared that one B., who was employed in defendant's office, induced plaintiff to open an account with defendant for stock speculations in B.'s name. The account was opened, and carried on with checks drawn by plaintiff, payable to defendant, received by his cashier, and deposited to his credit. *Held*, that B. was the agent of defendant in dealing with plaintiff, and the orders given by plaintiff to B. were binding on defendant.

Appeal from judgment on report of referee.

Action by Cornelius F. Timpson against Henry Allen and another for an accounting against the defendants as brokers, and for the value of 100 shares of stock purchased and held by them on plaintiff's account. The referee found $2,303.76 due from defendants to plaintiff, with interest from November 15, 1892, and gave judgment accordingly, and defendants appeal. Affirmed.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

Charles H. Brush, for appellants.
William A. Abbott, for respondent.

DALY, C. J. The defendants, Henry Allen & Co., were grain and stock brokers in the city of New York, and W. J. H. Ballard was employed in their office. He was not hired by the firm, but by one Palmeter, an employe of the firm, and received a salary, which was paid by the firm, but charged to Palmeter. His employment in and about the office and business of the defendants was ostensibly that of a clerk, or of one connected with the business, and transacting it with and for the firm's customers. He solicited custom and business for the defendants, and actually had authority to direct the opening of accounts with customers he procured, his orders in respect thereof, and in the management of the accounts, being obeyed by the firm and its employes, and his directions for buying and selling given or transmitted by him to the board member of the firm were duly executed. He induced the plaintiff to open an account with the defendants, first for speculations in grain, afterwards in stocks, the latter to be carried on under the name "Ballard, A." He received from the plaintiff checks for money to open these accounts, which checks were drawn by the plaintiff to the order of the defendants, and received by their cashier, indorsed by him in their name, and deposited to their credit. Ballard directed the accounts to be opened in the name "W. J. H. Ballard, A.," and his directions were obeyed. Subsequent checks for margins were drawn by plaintiff to defendants' order, and indorsed and deposited like the others. Ballard bought and sold stocks as directed by plaintiff from time to time, and among other stocks bought by plaintiff's direction were 100 shares of Tennessee Coal & Iron. This stock was subsequently sold, without plaintiff's knowledge, by the direc-

tion of Ballard, who also drew, and appropriated to his own use, moneys from the account, in fraud of plaintiff's rights, with the result that the account showed ultimately an indebtedness to defendants. When the plaintiff, apprised of the misdeeds of Ballard, demanded an accounting, the defendants ignored any interest on his part in the account, and claimed to be protected by the orders of Ballard, as ostensible principal in the transactions.

The authority of Ballard, actual and apparent, constituted him the agent of defendants, in dealing with the plaintiff; so that the directions of the latter given to Ballard were, in effect, given to defendants, the same as if they had been personally communicated to them. They knew that the account he opened in his own name was the account of a customer, and that the customer was the plaintiff,—this knowledge being imparted to them by the plaintiff's checks drawn directly to their order, with which the account was opened,—and they assumed the obligation to faithfully carry out plaintiff's instructions. In buying or selling and paying out moneys on Ballard's order, they took all the risk of his fulfillment of plaintiff's orders, the same as if such orders had been communicated to one of the firm. The receipt and deposit of the plaintiff's check drawn to their order, and brought to them by Ballard, made them liable to account to plaintiff for proceeds, which they could not safely pay out, except under the direction of the lawful owner. Sims v. Trust Co., 103 N. Y. 472, 9 N. E. 605. The orders of Ballard did not protect the defendants, who were bound to ascertain what were the actual instructions he received from the plaintiff. Had they inquired, it would have been disclosed that the account which Ballard opened with checks in his own name was the plaintiff's account, to be known as "Ballard, A.," and that the instructions given to Ballard were given to him as the agent of defendants. As they refrained from making any inquiry, the liability of the defendants is the same as if they had notice of the facts which inquiry could or might have elicited. ·

The several grounds upon which defendants seek to escape liability will be considered:

It is claimed that the plaintiff instructed Ballard to conceal his interest in the account from the latter's principals. This contention is founded upon the admitted fact that plaintiff instructed Ballard to open the account under the name "Ballard, A.," because he did not wish it known that he was operating in stocks; but there is no evidence that he intended the facts to be concealed from the defendants, and there was in fact no concealment from them, because the plaintiff opened the account with his own checks drawn to their order; a direct transaction with them in his own name, and constituting notice that the money deposited with them was his money, and the account was his account.

Defendants claim the benefit of the presumption that the person in whose name the account stands is the party in interest, from whom they are justified in taking instructions. Willard v. White, 56 Hun, 581, 10 N. Y. Supp. 170. The case cited was that of an ac-

count opened with New York brokers by correspondents in another city; and although the correspondents were known to be brokers, and presumably acting for third parties, the New York dealers were justified in treating them as principals, and acting upon their instructions. But there could be no presumption in this case that Ballard was the owner of this account because he opened it in his own name, for he was the employe and agent of the defendants, and he disclosed the real party in interest to his principals by delivering to them the checks of the latter, payable to their order, with which the account was opened.

The defendants also invoke the principle that, where one of two innocent parties must suffer from the act of a third person, that party must sustain the loss who has enabled a third person to do the injury. The application of the doctrine is entirely against the defendants in this case, even if they were innocent parties, which they are not. They knew that the account was opened with the plaintiff's money, and they could not pay it out without his orders, yet they refrained from inquiring for his instructions, and treated the account and moneys as the property of their own agent, thus assisting the latter to inflict upon plaintiff the loss resulting from any temptation to which this dealing might have subjected him.

Nor are the remaining objections of defendants to this judgment any more substantial than the others. They claim that they are not chargeable with Ballard's knowledge of the facts as to the account, because he was acting independently, and adversely to their interest. The answer is that the defendants are chargeable with their own knowledge derived from the receipt of the plaintiff's checks to their order. They claim that no notice is to be imputed from the manner in which the checks were drawn, because the plaintiff's actual instructions to Ballard were to place them to Ballard's account. But the plaintiff gave no such instructions. His direction to Ballard was to place them to plaintiff's account under the name of "Ballard, A.," which was adopted as a title for the account, and in no wise constituted Ballard the owner of the moneys or property embraced in it. They claim that plaintiff's own negligence is the cause of his loss, in that he opened his account in the name of an employe of defendants, and thus himself opened the door to the fraud and imposition subsequently practiced upon him. This contention is answered by defendants' own suggestion that the possibility of fraud could have been avoided by calling the attention of the defendants or their cashier to the fact that the account was the plaintiff's; but this was done in the most effectual manner by the plaintiff's opening the account with his own checks drawn to the defendants' order, the legal effect of which was to charge them with the obligation of paying out no part of the proceeds without his instructions.

No other point made upon this appeal requires the reversal of a judgment founded upon the clearest principles of justice, and supported by the able opinion of the referee. As to all questions of fact which the referee was called upon to decide, where there was a

conflict of evidence, we think the preponderance is clearly with his findings. Where the testimony of Ballard is opposed to that of plaintiff, we do not hesitate to say that it was entitled to no more weight than the referee gave it. The judgment should be affirmed, with costs. All concur.