FRANCIS CHARLES LE MARCHANT and Others, Plaintiffs, *v.* JOHN G. MOORE and Others, Defendants.

*Stock pledged by the agent of the owner — right to the surplus arising on the sale thereof — payment of the same by the pledgee, after notice of the owner's rights, to the assignee of the agent.*

It was shown, on the submission of a controversy, by the agreed statement of facts, that the plaintiffs, in September, 1891, ordered Evans & Co. to buy and forward to them certain stock, and that Evans & Co. ordered the defendants to buy it for them, which the defendants did, charging the price paid in their general account with Evans & Co., and retaining such stock, with others, as collateral security for such general account. A portion of such stock still remained in the possession of the defendants on October twenty-fourth, when Evans & Co. made a general assignment for the benefit of creditors.

Shortly afterwards the plaintiffs ascertained that this stock was in the hands of the defendants, and thereupon notified them that they were its owners; requested that delivery thereof be made to them, and information with regard to any charges or claims which the defendants might have against the stock, and further requested that on any sale of collateral which the defendants might make for account of Evans & Co. that they should sell such stock last, and give the plaintiffs notice of the time and place of sale, and account to them for the proceeds thereof. This was the first information received by the defendants that the stock had been purchased for the plaintiffs.

The defendants declined to deliver the stock to the plaintiffs or to recognize their claim in any way, and thereafter sold the stock in question and other collaterals without notice to the plaintiffs and without their knowledge and consent, realizing therefrom $5,324.66 over and above the indebtedness of Evans & Co. to them, and turned over such amount to the assignee of Evans & Co.

*Held,* that had the plaintiffs known of the sale of such stock by the defendants, and of the surplus arising therefrom before the money was turned over to the assignee of Evans & Co., they could have successfully prosecuted a suit for its recovery;

That the defendants, having knowledge of the plaintiffs' ownership of the stock, and presumably of their legal right to recover of them the surplus, could not deprive the plaintiffs of that right by selling the stock without their knowledge, and promptly turning over the proceeds to one who, as against them, was not entitled to the same.

SUBMISSION of a controversy upon an agreed statement of facts, under section 1279 of the Code of Civil Procedure.

*Charles W. Pierson,* for the plaintiffs.

*George Hoadly,* for the defendants.

PARKER, J.:

Plaintiffs, in September, 1891, ordered Evans & Co. of Boston, with whom plaintiffs had on deposit the money with which to pay for it, to buy and forward to them 200 shares of St. Paul, Minneapolis and Manitoba stock.

Evans & Co. ordered defendants to buy it for them, which they did, charging the price paid in their general account with Evans & Co., retaining the stock, together with other stocks and bonds, as collateral security for such general account.

October twenty-second, following, defendants, pursuant to the directions of Evans & Co., delivered 100 shares of the stock to the Bank of British North America for the credit of these plaintiffs. The remaining 100 shares, which are the subject of this controversy, continued in defendants' possession.

Two days later Evans & Co. made a general assignment for the benefit of creditors. Shortly thereafter plaintiffs ascertained that this stock was in defendants' hands, and thereupon notified them that they were its owners, requested delivery thereof to them and information with regard to any charges or claims which defendants

might have against the stock, and further requested that on any sale of collateral which defendants might make for account of Evans & Co. that they should sell this stock last and give plaintiffs notice of the time and place of sale, and account to them for the proceeds thereof. This was the first information received by defendants that the stock had been purchased for plaintiffs.

Defendants declined to deliver the stock to the plaintiffs, to impart any information upon the subject or to recognize plaintiffs' claim in any way. At all times after the purchase by defendants of such stock the market value of the securities held by them as collateral to Evans & Co.'s account exceeded the amount of their indebtedness to them. Thereafter, and before January 20, 1892, in pursuance of instructions given by the assignee of Evans & Co., defendants sold all of said securities, except twenty-five shares of Ensley land of uncertain value, 1,100 shares of Boston Air Line, worth $1,100, and the 100 shares of the stock in controversy, the proceeds being applied upon the general account of Evans & Co., leaving a balance still due the defendants of a little less than $6,000. On the date last named defendants sold said 100 shares of stock, and, with the proceeds, canceled the remaining indebtedness of Evans & Co. to them, and turned over the balance, amounting to $5,324.66, together with the Ensley land and Boston Air Line stock, to the assignee of Evans & Co. All this was done without notice to plaintiffs, and without their knowledge or consent.

Plaintiffs not having received their stock, or anything upon account thereof, claim that they were at least entitled to have received the sum which defendants turned over to the assignee of Evans & Co., it being a part of the moneys received by defendants directly from the sale of stock purchased by Evans & Co. for them.

To this contention the defendants in effect reply, true, you were the real owner of the stock, the undisclosed principal of Evans & Co., but we did not know it at the time the stock was purchased, and, therefore, we were not bound to recognize your claim when the fact did come to our knowledge.

It was our right if we chose to turn the proceeds of your stock over to the assignee of your wrongdoing agents. Whether you should ever come to your own was no concern of ours, for, as we knew you not in the beginning, the fact that you should afterwards

come to our attention, bearing the evidence of ownership to the stock then held by us in pledge, imposed upon us no legal duty towards you.

It is true that the Legislature has provided a way by which the courts can require two hostile claimants for money, or chattels in the hands of a third person, to contest the matter as between themselves without expense to the third person willing to deliver the property or pay over the money. And we might have availed ourselves of this provision of the statute, or brought an action in equity against the assignee of Evans & Co. and these plaintiffs, and had the rights of the parties established and justice fully done without injury to ourselves. But, for some reason which we do not disclose, we preferred to pay it to one who, in good conscience, ought not to have had it, because it was the proceeds of property belonging to his assignor's principals who were not disclosed when the purchase was made. We claim that the law supports our position, because there were no contractual relations existing between us. There was no privity of contract or of estate.

It would be unfortunate, indeed, if the law was not modeled on a broader plan than defendants' conception of it.

Before referring to the cases which we think establish the legal unsoundness of defendants' position, we call attention specially to the fact that plaintiffs' stock was sold in order that defendants might obtain so much of the proceeds as was necessary to liquidate the remaining indebtedness of Evans & Co. to them. This action on their part is not open to criticism, because, while the stock really belonged to the plaintiffs, that fact was not known to the defendants until after the failure of Evans & Co., and there had then arisen such equities in their behalf as entitled them as pledgees to sell the stock for the purpose of paying the balance of the indebtedness on general account, for which they held the stock in pledge. But, after such indebtedness was fully satisfied, there remained in their hands $5,324.66, money of right belonging to the plaintiffs, so far as this record discloses, because the direct proceeds of stock of which they were the general owners. And of that fact defendants had due notice before paying it over to the assignee of Evans & Co., who, as defendants' agents, omitted to disclose their principal, and otherwise neglected to perform their duty.

FIRST DEPARTMENT, JUNE TERM, 1894.          [Vol. 79.

In 1884 E. K. Willard & Co., a firm of stockbrokers, found themselves in precisely the same position as were these defendants, but the action taken by them was quite different.

Westcott & Co., of Syracuse, had been in the habit of receiving orders from local customers, and then giving orders to E. K. Willard & Co. to purchase the stocks, without informing them of the names of the purchasers, and they were made for account of Westcott & Co.

One Everson, in October, 1884, ordered Westcott & Co. to purchase for him 100 shares of Chicago, R. I. & P. R. stock, and they in turn directed Willard & Co. to buy it, which they did, crediting Westcott & Co. with it on their books, and debiting them with the price paid. About two months later Westcott & Co. failed, owing Willard & Co. a substantial sum.

After the failure Everson demanded of Willard & Co. the amount advanced by him on his purchase, which, being refused, he demanded the stock, at the same time tendering the amount of the purchase price unpaid, which was also refused, Willard & Co. disclaiming any knowledge of Everson in the transaction, and claiming Westcott & Co. as their principals.

But after selling the stocks about which there was no controversy in relation to the ownership, and applying the proceeds on the general account of Westcott & Co., there still remained a substantial sum due them, but one much less than the value of stocks the ownership of which was claimed by Everson and others. Willard & Co. then commenced a suit in equity, making the assignee of Westcott & Co. and other claimants of the stock parties. Upon the report of the referee to whom the suit was referred to hear and determine, judgment was entered decreeing, among other things, that the stock should be sold; that plaintiffs should repay themselves out of the proceeds the sum still due them from Westcott & Co., and after the payment of certain fees and disbursements the plaintiffs should pay over to the assignee of Westcott & Co. the residue of the moneys resulting from the sale.

On appeal this court held that so much of the judgment as directed payment of the surplus moneys to the assignee of Westcott & Co. was error. Presiding Justice VAN BRUNT, speaking for a unanimous court, said : " It seems to us to be entirely clear that the referee erred in holding that the surplus of these sales should be

paid to the assignee. He was not a purchaser for value and he had no right to take any more than Westcott & Co. could themselves have taken if they had not made the assignment. These parties having traced their security or securities, which had been bought upon their account, into the hands of the plaintiffs, were at least entitled to receive from the plaintiffs whatever balance might remain after paying the indebtedness for which they were pledged." ( *Willard* v. *White*, 56 Hun, 581, 587.)

It will be observed that a judgment, which in that case adjudged the assignee to be entitled to receive a surplus such as defendants of their own motion determined Evans & Co.'s assignee to be entitled to receive, was reversed on the ground that the real owner of the stock was entitled to have the surplus paid to him.

It seems to follow from that decision that, had plaintiffs known of the sale of their stock by the defendants and of the surplus arising, before the money was turned over to the assignee of Evans & Co., they could have successfully prosecuted a suit for its recovery.

But they were not informed of the time and place of sale, although they requested that they should be, and the defendants, having knowledge of their ownership of the stock, and presumably of their legal right to recover of them the surplus, could not deprive them of that right by selling the stock without their knowledge, and promptly turning over the proceeds to one who, as against them, was not entitled to the same.

In *Wright* v. *Cabot* (15 J. & S. 229) the plaintiffs consigned 329 bales of esparto grass to E. & C. Stokes, their factors, for sale. The latter firm in their own name employed Cabot & Co. as brokers to sell the property. Before the proceeds were turned over E. & C. Stokes failed, after which plaintiffs' firm notified Cabot & Co. that they were the owners of the merchandise, E. & C. Stokes being only their factors. Cabot & Co. replied that they had no knowledge of such a firm, or that they were interested in any merchandise sold by them for E. & C. Stokes. Thereafter Stephen Cabot was examined in proceedings supplementary to execution, and testified that his firm held for the account of E. & C. Stokes the sum of $628.36. Thereupon an order was made that Cabot & Co. pay over such sum to the plaintiffs on the judgment, which was done. Nevertheless, it was held that the owners of the merchandise

FIRST DEPARTMENT, JUNE TERM, 1894.        [Vol. 79.

should receive such sum from Cabot & Co., because that firm had "received notice that the plaintiffs owned the goods, and that they were the principals of their agent, the factor. From that time the plaintiffs proceeded to deal with the proceeds at their own risk."

As this case comes within the rule established by the cases cited, the plaintiffs should have judgment.

While it results in a loss to the defendants, it is due entirely to their neglect of such opportunities as the law afforded them in the first instance to have provision made for a payment to the persons legally entitled to the money.

The plaintiffs are entitled to judgment against the defendants for $5,324.66, with interest from January 20, 1892, with costs.

Judgment ordered accordingly.

O'BRIEN and FOLLETT, JJ., concurred.

·Judgment ordered for plaintiffs, with costs.