[No. 18455. Department One. March 29, 1924.]

F. M. JORDAN, *Plaintiff*, v. JORDAN-WENTWORTH &
COMPANY, *Defendant*, ARTHUR G. COHEN, *Receiver*,
*Respondent*, THOMAS M. HUNTINGTON,
*Appellant*.[1]

PLEDGES (11) — CONVERSION BY PLEDGEE — INSOLVENCY — SALE BY
RECEIVER—RECOVERY OF PROCEEDS BY PLEDGOR. Where the pledgor of
corporate stock as security for a loan to a broker did not authorize
a re-pledge of the stock, he is entitled, on the insolvency of the
broker, to have the net proceeds of a receiver's sale of the stock
(which was re-pledged without his knowledge) applied to discharge
the pledge, without paying a proportionate share of the loss to
other creditors.

Appeal from an order of the superior court for King
county, Dykeman, J., entered September 20, 1923,
denying a petition to have the proceeds of a sale of
stock declared a trust fund, in receivership proceed-
ings. Reversed.

*Revelle, Revelle & Kells,* for appellant.

*Bausman, Oldham, Bullitt & Eggerman,* for respond-
ent.

HOLCOMB, J.—This appeal is from an order in the
receivership of Jordan-Wentworth & Company, a cor-
poration, which order denied appellant's petition to
have the proceeds of the sale of stock belonging to
him declared a trust fund and paid over to him accord-
ingly.

For a brief sketch of the proceedings leading up to
the receivership, and of the methods of doing business
for customers, and on the market in New York, see the
decision on the appeal of Starrett in this proceeding,
*Jordan v. Jordan-Wentworth & Co., ante* p. 126, 224
Pac. 389.

[1]Reported in 224 Pac. 392.

This case is, however, radically different from that of Starrett. In Starrett's case he bought stock on margin, depositing collateral security therefor, and made an express agreement that this collateral security might be pledged by the brokerage firm for any amount due thereon, without further notice.

This case arose on a petition by appellant supported by an affidavit. An order to show cause was issued to the receiver directing him to show cause why the petition should not be granted.

The petition and affidavit set up substantially the following facts: Appellant was the owner of three hundred shares of International Nickel stock, which he had purchased some time before the transaction in question, in California. In August, 1920, needing some cash, he took his stock to Jordan-Wentworth & Company and obtained a loan of $1,250 upon it. He left the stock as security and took the money. There was no agreement that Jordan-Wentworth & Company should have the right to repledge the stock to anyone for any purpose, either express or implied. A Mr. Herrin, a friend of appellant, then connected with Jordan-Wentworth & Company had accommodated appellant with loans in this manner on several occasions. Jordan-Wentworth & Company did not ask for the right to pledge the stock, and appellant would not have agreed thereto if he had been asked. He did not know until the receiver had been appointed that his stock had been repledged by Jordan-Wentworth & Company with Hutton & Company, brokers, of New York, who handled the stock transactions of Jordan-Wentworth & Company in New York.

Jordan-Wentworth & Company did, however, pledge the stock with their brokers in New York. There is nothing to show that it was repledged for a greater amount than the amount of appellant's loan, or that it

was otherwise put beyond the power of Jordan-Wentworth & Company to return it to appellant upon payment by him of the amount due on his loan. When the receiver was appointed, this stock was still in the hands of Hutton & Company, and a few days thereafter the court entered an order authorizing and directing the receiver to

"close out and liquidate, so far as possible, on March 31, 1923, or as soon thereafter as possible, all orders and uncompleted purchase and sale transactions on behalf of customers of defendant for the purchase or sale of stock, bonds, grain and other commodities. The rights, if any, of all persons with respect to, interest in, or liens upon or claim of title to any identifiable property so disposed of shall attach to the proceeds of such sale so far as the same may ultimately come into the hands of the receiver and be held by him for distribution, and may be traced and identified by such claimant, subject to proper orders of the court relative to expenses of administration."

The three hundred shares of International Nickel stock were sold, presumably under the authority of the above order, but the receiver refused to turn over to appellant the proceeds of the sale, less the amount of appellant's loan with interest. It is not disputed that appellant's stock sold for $4,329.50, and that the balance due, including interest, from appellant on his loan at the time of the sale was $1,066.79, leaving a balance belonging to appellant of $3,262.71.

It is uncontroverted that appellant had no order pending, no uncompleted purchase and sale transaction, and was not a customer generally of the brokerage firm for the purchase or sale of stock and bonds.

The trial court held that the transaction in question was not simply a loan secured by a pledge of the International Nickel stock by appellant.

Respondent contends that the nature of the trans-

action between the broker and appellant by which the broker acquired possession of the International Nickel stock is the real question in issue. Respondent also contends that the broker either impliedly or expressly acquired the right to repledge the stock.

There is no evidence in the record to sustain these contentions by respondent. The evidence of the witnesses for appellant is all to the contrary, and there is no evidence controverting the same. Counsel for respondent, at the close of the evidence for appellant, submitted the case "on claimant's own evidence."

The case therefore stands as follows:

Appellant borrowed $1,250, pledging the stock in question as collateral security for the loan. There was no agreement, either express or implied, that the pledgee could repledge the stock. Appellant never knew they had repledged it until after the appointment of the receiver. He had previously had some similar transactions with the company, in every one of which the stock was returned immediately upon repayment of the loan.

Therefore it is immaterial that the stock broker may have carried the stock "long" on his books, for appellant never consented or agreed thereto, or had any knowledge of it. His stock, therefore, never acquired the same status as that of a customer owing a debit balance. He never was such a customer.

The law is therefore plain that his stock was not rightfully repledged. In repledging the same and placing it out of their control and beyond their power to return it to the owner, the stock brokers converted the stock. Appellant's equity, therefore, is superior to that of the owners of other stocks, and it is his right to have the proceeds of the sale of his stock applied to the discharge of the pledge before he can be called upon to bear the burden imposed upon his property by the

wrongful act of his bailee. *Willard v. White,* 56 Hun 581, 10 N. Y. Supp. 170; *Skiff v. Stoddard,* 21 L. R. A. (Conn.) 102; *Richardson v. Shaw,* 209 U. S. 365; *Gorman v. Littlefield,* 229 U. S. 19.

And the customer of the broker, being the owner of the stock at the time of the insolvency, the proceeds above the balance due are the property of the customer. *Turner v. Schwarz & Sons,* 140 Md. 465, 117 Atl. 904.

"No creditor could justly demand that the estate be augmented by a wrongful conversion of the property of another in this manner, or the application to the general estate of property which never rightfully belonged to the bankrupt." *Gorman v. Littlefield,* 229 U. S. 19.

The judgment is therefore reversed with instructions to enter a judgment in favor of appellant for the balance belonging to him as the net proceeds of the wrongful sale of his stock, after deducting the amount of the loan and interest, in the net sum of $3,262.71, and costs.

MAIN, C. J., TOLMAN, MACKINTOSH, and PEMBERTON, JJ., concur.