FRANK M. GILLETT et al., Respondents, *v.* WILLIAM I. WHITING, Appellant.

In an action to recover for losses claimed to have been sustained by plaintiffs, who were stock brokers, on certain stock purchased by them on a margin for defendant, the evidence as to whether plaintiffs notified defendant before sale to put up more margin, or in case of failure so to do that a sale would be made, was conflicting. It was not claimed that it was understood by defendant to be the custom of plaintiffs to sell without notice. The court was requested to charge the jury that if plaintiffs sold the stock without notice to defendant as to the time and place of sale, they violated their duty to defendant and converted the stock to their own use. This request was refused. *Held*, error; that the relation existing between defendant and the plaintiffs was that of pledgor and pledgee, and if plaintiffs sold the stock without demanding additional margin, or giving defendant reasonable notice that a sale would be made, the sale was wrongful and operated as a conversion; also, that this did not entitle defendant simply to a reduction of plaintiffs' damages by the amount of loss proved to have been suffered by defendant because of the sale, but went to the whole damages; as plaintiffs having failed to perform their contract were not entitled to any recovery.

*Baker* v. *Drake* (53 N. Y. 211), distinguished.

*Gillett* v. *Whiting* (23 J. & S. 187), reversed.

(Argued April 21, 1890; decided June 3, 1890.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made the first Monday of December, 1887, which affirmed a judgment in favor of the plaintiffs entered upon a verdict.

The nature of the action and the facts are sufficiently stated in the opinion.

*Joseph A. Shoudy* for appellants.   The sale of the stocks, without notice to the defendant of the time and place of sale was a clear conversion thereof by the plaintiffs, and the refusal of the court so to instruct the jury was error. (*Markham* v. *Jaudon*, 41 N. Y. 235 ; *Stenton* v. *Jerome*, 54 id. 480 ; *Baker* v. *Drake*, 66 id. 518.)   The wrongful sale by the plaintiffs of the stocks in question was a complete defense to the action. (*Knickerbocker* v. *Gould*, 115 N. Y. 538.)

*Ira D. Warren* for respondents.   If defendant promised to pay the account, which he does not deny, there was not even a question of fact for the jury.   It was a ratification of the act of his agents.   (*C. Bank* v. *Warren*, 15 N. Y. 577.)

HAIGHT, J.   This action was brought to recover losses which the plaintiffs claim to have sustained by reason of certain stock speculation by the defendant.   The plaintiffs, as brokers, purchased for the defendant, upon his order, 200 shares of stock, he delivering them $400 as a margin.   Subsequently, the stock was sold, resulting in a loss over and above the margin paid by the defendant, which loss is sought to be recovered in this action.

In submitting the case to the jury the defendant's counsel requested the court to charge, that in case the plaintiffs sold the stock without notice to the defendant as to the time and place of sale, by doing so, they violated their duty to the defendant and converted the stock to their own use.   The court refused to charge as requested, and an exception was taken by the defendant.

It appears to us that this request was proper, and that the charge should have been made.   The relation existing between the defendant as customer, and the plaintiffs as stock brokers, was that of pledgor and pledgee.   The plaintiffs had undertaken to purchase and hold the stock for the defendant, subject to his order.   The defendant had undertaken to make good his margin within a reasonable time after notice so to do ; and, if this was not done, the broker could sell upon giving reasonable notice.   But, if he sold without demand to

supply additional margin or notice that the sale would be made, the sale would be wrongful and operate as a conversion of the stock. (*Markham* v. *Jaudon*, 41 N. Y. 235 ; *Stenton* v. *Jerome*, 54 id. 480 ; *Baker* v. *Drake*, 66 id. 518.)

In this case there is no claim made that it was a custom of the plaintiffs' office to sell without notice, which was understood by the defendant. The learned General Term was of the opinion that the fact of conversion did not go to the whole damages asked by the plaintiffs, but entitled the defendant to a reduction of the plaintiffs' damages by the amount proven to have been suffered by the defendant from the sale at the particular time when it took place ; and that no such amount was proven. We do not understand this to be the law. This action was based upon performance of the agreement by the plaintiffs, in which they undertook to carry for the defendant the stock purchased, and, if, instead of performing the contract on their part they converted the stock to their own use, they have no ground of complaint or cause of action against the defendant. This is not a case in which the customer is suing the broker for damages he has sustained by reason of a conversion of the stock by the broker, as was the case in *Baker* v. *Drake* (53 N. Y. 211).

In this connection it may not be necessary to discuss the evidence bearing upon the matter embraced in the request to charge, and we shall but briefly allude to it. The plaintiff Mills, upon his direct examination, stated that they repeatedly sent to the office of Scannell Brothers, where the defendant's headquarters were supposed to be, and where he said he would be, that he must come up to the office and put up more money, for the plaintiffs would not carry the stock on their own money ; that, not hearing from him, they sold out the 100 shares of North Western stock at a loss of $775. It subsequently appears that this sale took place on the nineteenth day of October; that the remaining 100 shares of Ohio Southern stock was held until the 28th day of January, 1885, when it was sold. Upon his cross-examination, he testified that the request for additional margin was *after* they had sold

the first stock, and that that was the only request the witness made personally.

The witness Smith, who was plaintiffs' bookkeeper, testified that the defendant told him to send notices for him to Scannell Brothers; that after the stocks had depreciated in value and before the sale he sent notices to him at Scannell Brothers calling for additional margin. On his cross-examination he testified that he did not deliver the notices himself; that he gave orders with regard to the delivery of them. He further stated, however, that on one occasion the defendant came into the office to see how his account stood and that it was the witness's recollection that this was prior to the sale of the North Western stock; that after the sale of the North Western stock he showed him the account again showing a deficiency; that he asked the defendant, if he would give some more margin; that he asked him twice; that he supposed the first time was about the fifteenth or eighteenth of October; that occured at the office. He further testified that he did not send the defendant any notice in reference to margin on the Ohio Southern stock; that it never required any more margin; that it was taking the two stocks together that showed a deficiency on account of margin.

It will be observed that it does not distinctly appear from this testimony that the demand for additional margin was made before the North Western stock was sold which is the stock upon which the loss to the plaintiffs resulted. Mills' request was after the sale and there is no evidence showing that the notices ordered to be sent by the witness Smith were ever in fact delivered, and as to his personal interview he does not appear to be clear in reference to the time, but supposes it was about the fifteenth or eighteenth of October. These notices and interviews pertain to additional margin and not a word appears in reference to any notices that the stock would be sold. The defendant testified that he received no notice of sale or demand for additional margin. It consequently appears that the jury might have found that the notice mentioned in the request was not given.

It is claimed on the part of the respondent that after the sale of the stock the plaintiffs made out an account, presented it to the defendant, that the defendant accepted it and agreed to pay the amount, thus ratifying the sales as made. If this was true, it would be a complete answer to the error pointed out in the charge of the court. But we are unable to see how we can determine whether or not this claim is true in fact. It is true that the plaintiff Mills, and his bookkeeper Smith, testified that the account was presented and the defendant promised to pay ; but the question of credibility is involved in the testimony of a party, making a question of fact for the jury. The defendant denied that he ever promised to pay the account ; that at the time he saw the plaintiff he had not received an account of the sale of the stock, but subsequently it was forwarded to him from St. Johns ; that Smith met him down stairs after he got the account and that he did not remember whether Smith made the statement sworn to by him or not ; that he would not swear as to that. The plaintiffs asked the court to submit to the jury the question as to whether the defendant promised to pay, after knowledge of the transaction, which was done. Thus treating the question as controverted, we are unable to see how we can regard it otherwise upon this review.

It follows that the judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.