In re OLIVER et al.

(District Court, W. D. Missouri, St. Joseph Division. July 31, 1901.)

1. BANKRUPTCY—CREDITORS—PREFERENTIAL PAYMENTS—SET-OFF.
    Creditors, within four months of the filing of the petition on which their debtor was adjudged a bankrupt, were paid, and within such time granted him further credit for a less amount for property which became a part of his estate. They petitioned to have their claim set off against the amount so received, and on payment of the balance to the trustee to be permitted to prove the amount of their last claim, plus the amount so returned. In their petition they alleged that at the times such payment was made and such further credit given they did not know, or have reason to believe, such bankrupt was insolvent, if such insolvency existed at either of such times. Held, that such petition should be denied, since the offset of credits given in good faith to a debtor within four months of the institution of proceedings in which he is adjudged a bankrupt, authorized by Bankr. Act, § 60c, applies only to the cases referred to in section 60b, where the payment within four months is received by a creditor who has reasonable cause to believe that it was intended thereby to give him a preference.

2. SAME—PLEADING.
    In proceedings by a creditor of a bankrupt to obtain a set-off of a credit given after receipt of a preferential payment, he must plead the essential facts entitling him thereto in the same manner as if he sought to maintain a separate action on such claim.

3. SAME—PAYMENT IN GOOD FAITH—BALANCE OF CLAIM.
    Where a creditor, having no knowledge or reason to believe his debtor is insolvent, receives a payment within four months of the filing of the petition on which such debtor is adjudged a bankrupt, the payment may be retained, under Bankr. Act, § 57g, but in such case the creditor cannot prove the balance of his claim.

In Bankruptcy.

Willock & Mondhank, petitioning creditors.

J. B. Shackelford, for claimant.

PHILIPS, District Judge. This cause is before the court for review on exceptions filed by the petitioning creditors to the ruling of the referee. It presents a remarkable proceeding, if we are to have any regard to the provisions of the bankrupt act. The creditors, Willock & Mondhank, in the first place, presented to the referee for allowance against the estate an open account for $54.50, which

accrued within four months of the filing of the petition in bankruptcy, and while the debtors were insolvent. The fact appearing that within the four months, and while the debtors were insolvent, said creditors had received a payment of another account against the bankrupts for $60.20, thus receiving a preference within the meaning of the bankrupt act, the referee ruled, under section 57g of the act, that the claim could not be allowed unless the creditors would surrender such preference. To this ruling the creditors excepted, and the matter was certified to this court for review. On the hearing before the court the exceptors insisted that they were entitled, under section 60c of the act, to have said claim for $54.50 set off against the amount of the preference. The court affirmed the ruling of the referee, and held, inter alia, that the state of the proceedings before the referee did not present the question of such set-off. The case was certified back to the referee to proceed accordingly. Without appealing from the ruling of the court, or complying therewith, these creditors thereafter, of their own motion, presented a petition to the referee, reciting, in substance, that the account for $54.50 was for flour sold by the petitioners to said Oliver & Lamar; that shortly prior thereto said bankrupts paid the petitioners the sum of $60.20 in full of the then existing indebtedness of the bankrupts to them; and that thereafter, in good faith, they gave further credit to the amount of said $54.50, without security of any kind, for said flour, "all of which said property became a part of said bankrupt firm's estate; but that at the time said payment of $60.20 was made, and at the time said further credit of $54.50 was given," they did not know of, or have reason to believe, that said bankrupt firm was insolvent, if such insolvency at either of said times existed. The prayer of the petition is that said credit of $54.50 may be set off against said payment of $60.20, and that they be permitted to pay to the trustee of the estate the sum of $5.70, the difference between said payment and said subsequent credit; and that upon the payment of such difference their claim, increased by the amount so paid said trustee, making a total of $60.20, be allowed against the estate. It seems that the proceedings and evidence submitted on the hearing of the first-named case were treated as evidence in this case. The petitioners presented no other evidence in support of the allegations of the petition herein except proof of the tender of the $5.70 to the trustee. The trustee of the estate does not appear to have in any way appeared to or participated in this last proceeding. The referee having rejected the claim, the creditors again except, when the cause is certified to this court for review.

Without stopping to consider the effect of the first proceeding had herein upon this proceeding, the court will consider the question on its merits. Does section 60 contemplate any such proceeding as this? Subsection "a" declares, inter alia, that a person shall be deemed to have given a preference if, being insolvent, he has made a transfer of any of his property, the effect of which will be to enable any one of his creditors to obtain a greater per-

109 F.—50

centage of his debt than any other of such creditors of the same class. Subdivision "b" of this section declares that:

"If a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of the petition and before the adjudication, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

This is the only provision in the act for an enforced recovery from the creditor who has received a preference. This subdivision is immediately followed by subdivision "c" of the same section, which declares that:

"If a creditor has been preferred, and afterwards in good faith gives the debtor further credit without security of any kind for property which becomes a part of the debtor's estates, the amount of such new credit remaining unpaid at the time of the adjudication in bankruptcy may be set off against the amount which would otherwise be recoverable from him."

The supreme court of the United States, in the recent case of Pirie v. Trust Co. (reported in 21 Sup. Ct. 913, 45 L. Ed. ——, 3 N. B. News, No. 13, on page 576), say that subdivision "c" of section 60 "is applicable to the cases arising under 'b,' and allows a set-off, which otherwise might not be allowed." This enunciation decides this vexed question. The assertion by Mr. Justice McKenna must necessarily be correct on the rule of noscitur a sociis, for the reason that subdivisions "b" and "c" are but clauses of the same section, relating to the same subject-matter, and therefore must be read together. Subdivision "c" being applicable "to the cases arising under 'b,'" it must follow that, unless the case presented by the petitioners has reference to a proceeding arising under "b," there is no foundation for a set-off. Subdivision "b," in contradistinction to the instance provided for under section 57g, has reference alone to a preference received by a creditor with knowledge of the insolvency of the debtor, who is therefore guilty of a wrongful participation in the act of preference by the bankrupt. The penalty visited upon the creditor for such fraud upon the bankrupt act by subdivision "b," § 60, is that the trustee may recover the property, or its value, so wrongfully received by the creditor. Congress saw fit, by the succeeding subdivision "c," to make the only provision for the relief of such creditor, by providing that in such case he might set off against the amount thus recoverable from him any credit subsequently given in good faith by the creditor to the bankrupt, "without security of any kind, for property which becomes a part of the debtor's estates." Under such a statute, conferring a special right or privilege, on well-recognized rules of pleading the party seeking its protection must plead the essential facts entitling him thereto. The party pleading a set-off must make out his case "in the same manner as if he sought to maintain a separate action upon it." Gorham v. Bulkley, 49 Conn. 91; Cook v. Mills, 5 Allen (Mass.) 37; Gordon v. Bruner, 49 Mo. 572. Under subdivision "c" the creditor pleading a set-off would be required to plead and prove that after receiving such preference—first,

he had in good faith given the debtor further credit without security of any kind; and, second, that the property obtained from him by the debtor became a part of the debtor's estates; and ask to have the same set off against the amount which might be recoverable against him. The petition presented by these creditors to the referee does not even admit that the debtors at any time were insolvent, and denies any knowledge of such insolvency. It does not concede that any amount is recoverable from them because of having received a preference. It must be assumed that some of the distinguished lawyers of the senate, who drafted the section of the statute in question, when they used the terms "such new credit * * * may be set off against the amount which would otherwise be recoverable from him," employed such terms in their usual and ordinary legal acceptation. What is a set-off? It is defined by the law dictionaries and text-books as "a demand which a defendant makes against the plaintiff in the suit for the purpose of liquidating the whole or a part of his claim; in law, when the defendant acknowledges the justice of the plaintiff's demand on the one hand, but on the other sets up a demand of his own to counterbalance that of the plaintiff either in whole or in part." Statutes permitting set-offs invariably refer to "the mutual liquidation of debts or demands." The term "set-off" implies mutual demands between the plaintiff and the defendant. The one party, when demanded of by the other to pay, responds that he also has a demand against the demandant, which he proposes to set off in whole or in part satisfaction of the demand made against him. The trustee, representing the bankrupt's estate, has no claim against, and no right in law or equity to demand of, the creditor the restitution of any money or other property which he has received from the debtor in good faith in ignorance of the debtor's insolvency. The creditor in such case has the right to retain what he has received. The only obligation imposed upon him in such case is by section 57g, which requires that, if he would participate in any dividends of the bankrupt's estate in any further claim he may have against it, he can only be permitted to do so by surrendering such preference. But when he has knowingly participated in the act of preference by the insolvent, the trustee, under section 60b, may demand restitution, and "recover the property or its value from such person." It is against this demand, and this demand alone, that the preferred creditor may interpose the set-off permitted by subsection "c" of section 60.

The courts which have authorized such a set-off as the petitioners here seek practically wipe out all distinction between section 57g and sections 60b and 60c. It is said the language, "the amount which would otherwise be recoverable from him," means nothing more than the amount which the trustee or the estate may receive back from the preferred creditor if he voluntarily surrenders the same. So that, when he voluntarily offers to account to the trustee for the difference between what he has received and any other claim he has against the estate, this amounts to a "recovery," within the intent of subsection "c." The term employed by the

lawmaker is "recoverable," the plain, ordinary, and natural mean-ing of which is that which is able to be, or is capable of being, re-covered; "obtainable from a debtor or possessor as by legal pro-cess." It means that which can be recovered as a matter of legal right. The assumption is inadmissible that the lawmakers, in for-mulating the statute for the enforcement of rights and obligations, would speak of "an amount which would be recoverable" save in respect of demands enforceable at law against the derelict. As the preceding subdivision of the same section has defined the char-acter of claims which may be recovered by the trustee from the creditor on account of a preference, under the well-settled rules of construction, subdivision "c" necessarily refers and limits the term "recoverable" to the recovery spoken of in subdivision "b." But it is said that to limit the provision of subsection "c" literally to allowing as a set-off a subsequent credit given in good faith solely to the instance of a preference with knowledge of the debt-or's insolvency would render the equitable relief contemplated by subdivision "c" practically useless, as it is hardly conceivable that a creditor who had knowledge of the insolvency of the debtor within four months could afterwards within four months give additional credit in good faith. If this were so, it furnishes no reason why the courts, by judicial construction, should amend the statute. It is not inconceivable that a merchant or other person might to-day have reason to believe that his debtor is in an insolvent condition, and yet, within four months afterwards, by reason of the debtor paying off an existing debt, and by the apparent improvement in his business, and the good showing made of his resources and ex-pectations, and the like, beget an honest belief in the creditor that his first information and impression were incorrect; and so, believ-ing the debtor to be solvent, extend him a further credit in good faith. It is a question for the triors of the facts to determine on the evidence presented by the creditor, when pursued by the trus-tee, as to whether the second credit was extended under circum-stances which entitle him to plead it as a set-off.

But what right has the court, because of the difficulty or im-practicability of the party bringing himself within the provisions of a statute, to say that the statute must be made to mean more or less than what it says? Where the law is expressed in plain and unambiguous terms, whether these terms are general or lim-ited, the legislature should be intended to mean what it has plainly expressed. Lake Co. v. Rollins, 130 U. S. 662, 9 Sup. Ct. 651, 32 L. Ed. 1060. It is among the recognized canons of interpretation and construction of statutes that that is not liable to interpretation which has no need of interpretation; and to go elsewhere than to the statute in search of conjectures in order to restrict or extend it is but an attempt to elude it. If the language of a law clearly expresses the meaning and intention, that meaning must be car-ried out. A departure from the language of an unambiguous stat-ute is not justified by any rule of construction; and is an exercise of the legislative power. Mill Co. v. Muxlow (N. Y.) 21 N. E. 1048; Domat Lois Civiles, tit. 1, § 2; Vattel, Inter. Treaties, liv. 2, c. 17,

§ 262; Sedg. St. Const. 221. Consider, for a moment, the effect or result of the petitioners' attempt to avail themselves of such set-off. Had they, in the capacity in which their petition places them, been ignorant, both at the time of receiving the $60.20 and giving the credit of $54.50, of the debtors' insolvency, under section 57g (applicable to their status) they could only have their claim allowed against the estate by surrendering to it $60.20, and then have an allowance against the estate in the sum of $114.70, taking their chances of receiving in dividends a greater sum than the preference of $60.20. Whereas, under the petition ruled on by the referee, by paying over to the trustee $5.70, they propose to retain the sum of $54.50 out of their preference, and then have allowed against the estate the sum of $60.20, and receive dividends thereon. If pursued, however, by the trustee, under section 60b, they would be exposed to the danger of a recovery against them of the sum of $60.20, with interest, with no right for any allowance against the estate of the account of $54.50. If, however, they should make good their set-off, they would have to account to the estate for $5.70, the amount tendered in the petition herein, without any right to have allowed against the estate either the claim of $54.50 or $60.20, or any other sum. In short, the practical effect of applying the provisions of said subdivision "c," as contended for by petitioners, would be to expunge subdivision "g" from section 57, and thus get rid of the results of the construction placed on the latter by the supreme court,—a consummation most devoutly to be wished for by the preferred creditor. The exceptions to the rulings of the referee on this petition are overruled, and the action of the referee in the premises is affirmed.