### In re TOPLIFF et al.

#### (District Court, D. Massachusetts. April 7, 1902.)

#### No. 5,346.

**BANKRUPTS—PREFERENCES—SURRENDER—NET INCREASE OF INDEBTEDNESS.**

Bankrupt stockbrokers four months before adjudication owed a customer $1,550. Thereafter they were employed by him to purchase and carry stocks on a margin, receiving from him considerable sums of money, and paying to him considerable, but lesser, sums as profits on his operations. At the date of the adjudication they owed him $6,500. *Held* that, though the relation between the broker and the customer was anomalous, no injustice was done by treating them in the case at bar as debtor and creditor, and the effect of the transactions having been to increase the net indebtedness to the customer, and presumably to increase the bankrupt's estate, the customer did not have to surrender the payments made to him within the four months to entitle him to prove his claim.

In Bankruptcy.

Walter N. Buffum, for creditor.

Edward C. Bradlee, trustee, pro se.

LOWELL, District Judge. The bankrupts were stockbrokers. The creditor who seeks to prove was their customer. Four months

before adjudication, viz., on July 2, 1901, the bankrupts owed the creditor $1,550. Thereafter they were employed by him to purchase and carry stocks on a margin. At times he paid them considerable sums of money, and at other times they paid considerable but smaller sums to him as profits on his operations. The last of their payments to him was subsequent to the last of his payments to them. At the date of the adjudication, November 2, 1901, they owed him about $6,500. The trustee disputes the creditor's right to prove this debt without the surrender of the alleged preferential payments. It was admitted that the bankrupts were insolvent on and after July 2d. There was no proof that the creditor knew this.

It appears to me that the case at bar is governed by Dickson v. Wyman, 49 C. C. A. 574, 111 Fed. 726. There the court said:

"It is beyond all reason to hold because a creditor has, in the ordinary course of business, during the four months preceding bankruptcy, received payments which, under some circumstances, might operate as a preference in some views of the law, that that fact can be held to bar the proof of his claim, when, looking at all the transactions together, they demonstrate, not only that they were without any intention to acquire any unjust preference, but also that they have increased the net indebtedness to the creditor, and correspondingly increased the bankrupt's estate. In order to avoid so unreasonable a result, we might say that all the transactions covered by the account current should be regarded as one, so that it could not be held that the effect of the payments was to enable the creditors at bar to obtain a greater percentage of their debt than any other creditor of the same class, within the meaning of paragraph a of section 60." 49 C. C. A. 577, 111 Fed. 728.

In the case at bar the transactions between June 2d and November 2d increased the net indebtedness to the creditor, and so presumably increased the bankrupt's estate. If the transactions "be regarded as one," they did not enable the creditor to obtain a greater percentage of his debt than other creditors of the same class. This is true, whether (1) the account be taken as stated in the trustee's brief, including purchases and sales of stocks, or (2) only the cash payments on the one side and on the other of the account are considered. The trustee seeks to avoid the effect of Dickson v. Wyman by arguing that that decision does not apply to transactions like these, but only to merchandise accounts like those there in controversy. But no material difference is pointed out between the two cases, and the language and the reasoning of the court of appeals are broad enough to cover both. The relation of stockbroker and customer is anomalous, as was pointed out by the supreme court of Massachusetts in Chase v. City of Boston, 62 N. E. 1059, and Rice v. Winslow, Id. 1057 (not yet officially reported), and by this court in Re Swift, 105 Fed. 493; but no injustice is here done the creditor by treating that relationship as one of debtor and creditor. If the bankrupts actually bought and sold the stocks mentioned in the account which they rendered to the creditor, then their estate was actually increased by the net result of the four months' transactions. If these purchases and sales be treated as fictitious, and if the fluctuations of the stock market be taken to fix day by day the amount due one party from the other, without regard to any actual purchase or sale of stock, then

the bankrupt's estate was increased by the excess of cash payments made by the creditor over those received by him.

The trustee further contended that only subsequent credits can be taken to balance prior preferences, and that the last payment, if made by the bankrupt, must be surrendered before the creditor's claim can be proved. Whatever may be the rule regarding "set-offs," strictly so called, as regulated by section 60c, there is no sufficient reason for this limitation upon the principle laid down in Dickson v. Wyman. That case was decided without regard to section 60c.

This court is well aware of the different decisions and opinions rendered by different courts regarding sections 57g and 60 of the bankrupt act. Some of these are so different as to be irreconcilable. The decision in Pirie v. Trust Co., 182 U. S. 438, 21 Sup. Ct. 906, 45 L. Ed. 1171, authoritatively settled one question, but left others open. Dickson v. Wyman, which is also binding upon this court, may be in more or less disagreement with some cases decided by other federal courts. See Mills v. Lewis, 49 C. C. A. 131, 110 Fed. 512; In re Teslow (D. C.) 104 Fed. 229. In several other cases, where the facts are not stated fully in the report, the decisions may be actually in conflict with Dickson v. Wyman. See In re Ft. Wayne Electric Corp., 39 C. C. A. 582, 99 Fed. 400; In re Arndt (D. C.) 104 Fed. 234; In re Conhaim (D. C.) 97 Fed. 923; In re Bashline (D. C.) 109 Fed. 965. On the other hand, McKey v. Lee, 45 C. C. A. 127, 105 Fed. 923, and Peterson v. Nash (C. C. A.) 112 Fed. 311, reach a decision like that reached in Dickson v. Wyman, but by different reasoning, viz., by treating section 60c as applicable to section 57g as well as to section 60b. In re Abraham Steers Lumber Co. (C. C. A.) 112 Fed. 406, it was held that the payment need not be surrendered, if made on a distinct and independent debt. In the argument made in the case at bar, counsel for the trustee attempted to distinguish between some of the cases just cited and Dickson v. Wyman, and to reconcile them accordingly; but I do not conceive it to be the duty of this court, in the interpretation of the confessedly ambiguous provisions of a recent enactment, to seek to establish a fictitious agreement between several courts by drawing fanciful distinctions between the decisions they have made. A better result will be reached by recognizing the existing disagreement, and by trying to follow loyally the course of reasoning and the fair intent of Dickson v. Wyman, a fully considered case decided by an appellate court which this court is bound to obey. In due time the difference of opinion between the several courts of appeals will be settled by the supreme court.

The creditor further contended that, under the provisions of section 60c, he was entitled to offset the payments made by him to the bankrupts. It has been held in several cases that the set-off given by section 60c is not applicable to section 57g. See In re Oliver (D. C.) 109 Fed. 784; In re Steers Lumber Co. (C. C. A.) 112 Fed. 406; In re Christensen (D. C.) 101 Fed. 802; In re Arndt (D. C.) 104 Fed. 234; In re Keller (D. C.) 109 Fed. 118; Pirie v. Trust Co., 182 U. S. 438, 21 Sup. Ct. 906, 45 L. Ed. 1171; Dickson v. Wyman, 49 C. C. A. 574, 112 Fed. 726. Other courts have held that the set-off given by section 60c is applicable to section 57g; McKey v. Lee,

45 C. C. A. 127, 105 Fed. 923; Peterson v. Nash (C. C. A.) 112 Fed. 311; In re Seckler (D. C.) 106 Fed. 484. Moreover, McKey v. Lee decided that, in order to be set off, the further credit given to the debtor need not be subsequent to the preference. It does not seem to have been observed that, if section 60c be inapplicable to section 57g, and be limited to section 60b, it will have scant application. Section 60b is confined to cases where the creditor has reasonable cause to believe a preference was intended. Clause "c" is confined to cases in which the debtor has acted "in good faith." How a creditor who has knowingly received a preference can afterwards give credit to the debtor in "good faith" is hard to imagine. It is not necessary to express an opinion on this point, as the decision of this case is left to rest upon Dickson v. Wyman.

Judgment of the referee reversed, and proof of claim allowed.