In re BOLLING.

(District Court, E. D. Virginia.    September 11, 1906.)

BANKRUPTCY—STOCK BROKER—TITLE TO STOCKS PURCHASED FOR CUSTOMER.

A stockbroker who purchases and carries stocks on account of a customer on margins furnished by such customer, holds the same as pledgee, and on his bankruptcy the customer is entitled to the stock on payment of the amount due thereon, or to the surplus realized from its sale by the trustee, to the exclusion of the bankrupt's creditors.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, § 207.]

In Bankruptcy.    On exceptions to report of referee.

W. J. Leake and L. R. Page, for trustee in bankruptcy.
George A. Hanson, for petitioner Dickinson.

WADDILL, District Judge.    In involuntary bankruptcy proceedings regularly inaugurated, Wyndham Bolling, a stockbroker doing business in the city of Richmond, Va., was duly adjudicated a bankrupt. His assets consisted mainly of the value of surplus margins in certain stocks held by him. Included in said assets were 500 shares of the stock known as "Steel Common," and on which there was a margin in hand, as ascertained by the sale thereof, of $2,175.74. Upon the bankruptcy of said Bolling, Emmet Dickinson, a customer, at once interposed his claim to said stock, and subsequently filed his formal petition asserting ownership thereof, by insisting that the same was purchased for and carried on his account, and that in carrying the same he had lost thousands of dollars; and praying that any sums arising from the sale of said particular stock should be decreed to him as his property; he being the owner thereof.

The question raised by the petition of said Dickinson involves his status respecting the steel stock in question; that is to say, whether, as between himself and his broker, the ordinary relation of debtor and creditor existed, or he occupied the more favorable position of a

pledgor of said stock. The questions arising on the petition were referred to the referee, who duly took evidence thereon, and reported adversely to the claim of the petitioner. The case is now before the court upon a review of the finding and decision of the referee. After a most careful consideration of the entire subject, and of the able and elaborate arguments of counsel, the conclusion reached by the court is that the referee erred in his ruling, both upon the question of law and fact; and that, therefore, the exceptions to his finding should be sustained. The evidence, in the view taken by the court, indisputably establishes the fact that the steel stock in question was purchased by the bankrupt, Bolling, on account of the petitioner Dickinson; and that the same was carried by him for Dickinson; that the latter furnished the money with which to buy and carry the same; and that, under such circumstances, Dickinson, who furnished the money, should be entitled to any surplus margin on this stock, instead of the general creditors of Bolling. There would seem to be no good reason in principle why this should not be the case, and that so inequitable a result should be worked out by the court as would follow if it decreed the money arising from the surplus margin to the general creditors of Bolling, who paid nothing on account of the stock, instead of to Dickinson, who paid for and carried the same. The court is largely influenced in reaching this conclusion by a careful consideration of the case of Skiff v. Stoddard, 63 Conn. 198, 26 Atl. 874, 28 Atl. 104, 21 L. R. A. 102, 110, 117, a decision of the Supreme Court of Errors of the state of Connecticut, which contains an exhaustive review of the subject of the ownership of and right to surplus margins due on stock carried by a broker for his customer, upon the failure of the former.

In discussing the effect of the view contrary to the one here taken, Prentice, J., speaking for the court, said (26 Atl. 879, 21 L. R. A. 111):

"So long as the interpretation of the contract preserves as its distinctive feature the principal proposition that the customer purchases merely the right to have delivery to him in the future, at his option, of stocks or securities at the price of the day of the agreement, and its corollary that the customer derives no right, title, or interest in the stocks or securities until final performance, the difficulties in the way of harmonizing the situation are bound to exist. The fundamental difficulty grows out of the necessary attempt in some way to transform the customer, who enjoys all the incidents, and assumes all the risks of ownership, into a person who in fact has no right, title, or interest, and to create out of the broker, who enjoys none of the incidents of ownership, and assumes not a particle of its responsibility, a person clothed with a full title and an absolute ownership."

And subsequently in the same case (26 Atl. 881, 21 L. R. A. 113), in discussing the status of the customer, and demonstrating that he occupies the position of pledgor of the stock purchased, as distinguished from an ordinary debtor, the same learned judge, referring to the leading New York case, and the authorities generally bearing on the subject, says:

"The leading case upon this subject in New York is Markham v. Jaudon, 41 N. Y. 235. The opinion of the court in that case delivered by Chief Justice Hunt, contains an analysis of the obligations of the parties to a margin-purchasing contract which is so exhaustive, and so in consonance with our views, in so far as it relates to the questions involved in this case, that we

quote it in full, together with some further pertinent observations of the court, as follows: 'The broker undertakes and agrees (1) at once to buy for the customer the stock indicated; (2) to advance all the money required for the purchases beyond the ten per cent. furnished by the customer; (3) to carry or hold such stocks for the benefit of the customer so long as the margin of 10 per cent. is kept good, or until notice is given by either party that the transaction must be closed. An appreciation in the value of the stocks is the gain of the customer, and not of the broker; (4) at all times to have in his name and under his control ready for delivery, the shares purchased, or an equal amount of other shares of the same stock; (5) to deliver such shares to the customer when required by him, upon the receipt of the advances and commissions accruing to the broker; or (6) to sell such shares, upon the order of the customer, upon payment of the like sums to him, and account to the customer for the proceeds of such sale. Under this contract the customer undertakes (1) to pay a margin of 10 per cent. on the current market value of the shares; (2) to keep good such margin according to the fluctuations of the market; (3) to take the shares so purchased on his order whenever required by the broker, and to pay the difference between the percentage advanced by him and the amount paid therefor by the broker. The position of the broker is twofold. Upon the order of the customer he purchases shares of stocks desired by him. This is a clear act of agency. To complete the purchase he advances from his own funds for the benefit of the purchaser, 90 per cent. of the purchase money. Quite as clearly he does not in this act as an agent, but assumes a new position. He also holds or carries the stock for the benefit of the purchaser until a sale is made by the order of the purchaser, or upon his own action. In thus holding or carrying he stands also upon a different ground from that of a broker or agent, whose office is simply to buy and sell. To advance money for the purchase, and to hold and carry stocks, is not the act of a broker as such. In so doing he enters upon a new duty, obtains other rights, and is subject to additional responsibilities.' The conclusion of the court is that this new relation is that of pledgor and pledgee. This doctrine has been adopted and approved by a long line of New York cases, among which are the following: Stenton v. Jerome, 54 N. Y. 480; Baker v. Drake, 66 N. Y. 518, 23 Am. Rep. 80; Gruman v. Smith, 81 N. Y. 25; Capron v. Thompson, 86 N. Y. 418; Gillett v. Whiting, 120 N. Y. 402, 24 N. E. 790; Willard v. White, 56 Hun, 581, 10 N. Y. Supp. 170. The Supreme Court of Illinois has held in accordance with the rule in New York. Brewster v. Van Liew, 119 Ill. 554, 8 N. E. 842. The text-writers have adopted this view. Dos Passos, Stockbrokers, 112; Cook, Stock & Stockholders, § 457; Jones, Pledges, 495; 18 Am. & Eng. Ency. Law, 707; Colebrooke, Collateral Securities, § 306; Overton, Liens, 205."

To the entire opinion of Judge Prentice, the court refers as containing a clear, able, and comprehensive exposition of the law on the subject, and one which from its reasoning and results the court feels clearly should be followed in the present case.

Counsel for the trustee earnestly insist that the settled rule of decisions under the existing bankruptcy act, respecting the status of stockbrokers and their customers, is that they occupy the relation of ordinary debtor and creditor, as distinguished from that of pledgor and pledgee; and, in support of their contention, refer to the following decisions: In re Swift, 105 Fed. 493, 5 Am. Bankr. Rep. 335, affirmed 112 Fed. 315, 50 C. C. A. 264, 7 Am. Bankr. Rep. 375; In re Topliff, 114 Fed. 323, 8 Am. Bankr. Rep. 141; In re Gaylord, 113 Fed. 131, 7 Am. Bankr. Rep. 577. A careful review of these cases, will not, in the judgment of the court, sustain them in their view. The case of In re Swift, which in its essential features was unlike the one under consideration, was from the District Court of the state of Massachusetts, and as well in the lower court as in the Circuit Court of Appeals, turned largely, if not entirely, upon the

state law of Massachusetts regarding the class of creditors under consideration, namely, that the relation of debtor and creditor existed, which doctrine should control in the federal court in cases in that state. The Topliff Case, also a decision from Massachusetts, turned upon the question of whether a creditor of the class in question, should be allowed to prove his debt against the bankrupt's estate, without surrendering certain preferential payments received by him within four months of the bankruptcy; and the conclusion reached under the then proved facts and circumstances, whatever might be the character of the claim, was that the doctrine respecting preferential payments did not apply to it. The Gaylord Case was a decision of the District Court of the Eastern District of Missouri, also involving the question of preferential payments, as in the Massachusetts case last cited. The customer of the stockbroker was seeking to prove a debt against the bankrupt's estate, and the question was whether, before so doing, certain payments received by him within four months prior to the bankruptcy should be surrendered; and the court held that, before making such proof, this should be done. But these decisions, or certainly the questions necessary to be decided in each of them, in no manner precludes the question presented by this record. The petitioner, Dickinson, is not seeking to prove a debt against the bankrupt's estate. He claims that a particular stock carried by another broker on account of the bankrupt, the latter having executed his orders with New York through a broker having a direct wire, was stock bought for him, on his account, and for which he had paid; that it was his stock, and that the surplus margin belonged to him, and not to the bankrupt's estate, nor subject to the demands of the general creditors.

No case like the one under consideration has been cited by counsel, and the court believes that none can be found, where so inequitable a doctrine would be sanctioned as would result in a denial of the petitioner's claim, after proof of the fact that the stock was bought and carried on his account, and paid for with his money. While it is true the referee found against the petitioner, being of opinion that he had not supplied evidence sufficient to establish his claim to the fund in question, according to the ordinary method of tracing trust funds, still the court feels constrained to differ from this finding, taking into account the peculiar relation sought to be maintained. The transaction in this case was but an ordinary stockbroker's agency in the purchase and carrying of stock upon margin. Neither the petitioner nor the bankrupt ever actually handled the particular stock bought; but petitioner gave his orders to purchase stock on margin to the bankrupt, in the ordinary course of such speculative transactions, and the evidence he furnishes establishes as conclusively, as it is ever possible to trace this class of dealing, the fact of the purchase made on his account, and of the payments made by him to carry the stock. The broker received only a commission on the transaction; and to deny to this petitioner the right of recovery under the circumstances of this case, would clearly be to hold that a purchaser of stock on margins could under no circumstances recover

back what had been unexpended of the amount advanced by him, on the stock, in the event of the failure of the middleman, the broker.

The exceptions to the referee's report will be sustained, and a decree entered in favor of the petitioner, Dickinson, for the amount admitted by the parties to be $2,175.74, with costs.