## LOUISA M. STENTON, Respondent, *v.* LEONARD W. JEROME et al., Appellants.

Defendants, stockbrokers, purchased certain stocks for plaintiff under an agreement by which she was to furnish a specified margin as security, and keep the same good when called upon; in event of non-compliance with such demand, defendants were authorized to close the account by purchase or sale at public or private sale without notice. These stocks they sold without notice; at the time plaintiff's margin was reduced below the amount required, but no call or demand for further security was made, nor was there a tender of the certificates and demand of payment therefor. In an action to recover damages, *held*, that the relation of pledgor and pledgee existed between the parties; that the sale was unauthorized and wrongful, and defendants were liable.

After such sale defendants made up and presented to plaintiff an account crediting the stocks at the prices for which they were sold and showing a balance due them which they demanded; plaintiff complained of the sale, but upon defendants threatening to sell other securities they held belonging to her, which she needed for use, she paid the account. *Held*, that this was not an assent or acquiescence in the account or sale, and that plaintiff was not concluded by the payment as a voluntary payment.

To make an account stated, there must be a mutual agreement between the parties as to the allowance or disallowance of their respective claims; and to establish such an account, so as to preclude a party from impeaching it, save for fraud or mistake, there must be proof of assent to the account as rendered, either express, or implied from failure to object within a reasonable time after presentation.

Payment of a claim for the sole purpose of releasing property held in pledge by the claimant, and which he refuses to surrender without such payment, is not a voluntary payment and does not preclude the pledgee from questioning the claim.

(Argued March 20, 1873; decided September term, 1873.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial district, affirming a judgment in favor of plaintiff, entered upon the report of a referee.

The action was brought by the plaintiff against the defendants as her stockbrokers, to recover damages upon sale of certain stocks by them without authority.

About the time the plaintiff commenced to deal with the

defendants, at their request she executed and delivered to them an instrument embodying the agreement between them, of which the following is a copy, to wit:

"NEW YORK, *Nov.* 28, 1864.

"Messrs. JEROME, RIGGS & Co.:

"Please open an account with me for the purchase and sale of stocks, on which, in consideration of the sum of one dollar, I agree to deposit with you as security twenty per cent on the par value of said stock, and to keep said deposit equal to fifteen per cent, as the same may fluctuate at the stock exchange, whenever called upon so to do; and in the event of non-compliance with such demand, you are hereby authorized to close the account without notice by purchase or sale, at public or private sale, or at the brokers' board or otherwise, returning to me any balance in my favor, and I agree to pay to you any balance against me on said account.

"LOUISA M. STENTON.

"This to remain in force until countermanded."

In pursuance of this arrangement she made deposits of money from time to time with the defendants, and upon her order they purchased and carried stock for her. She was not at any time required by them to keep her marginal security as high as the amount mentioned in the above instrument, and whenever they demanded additional margin she furnished it.

On the 11th of January, 1866, the defendants held and were carrying for the plaintiff three lots of stock, to wit: 100 shares of the Chicago and Rock Island Railroad Company, purchased October 18, 1865; 200 shares of Reading Railroad Company, purchased December 16, 1865, and 100 shares of the Fort Wayne Railroad Company, purchased January 3, 1866. On the 11th day of January, 1866, the defendants sold the three lots of stock at the market rates on that day, which were considerably lower than they cost. Plaintiff's marginal security had declined to three or four per cent, but no notice thereof was given to her. The sale,

was made without notice to her, and without notice, call or demand that she should furnish further marginal security, and without a tender to her of the certificates of the stocks or of a demand of payment therefor. On the 6th of January, 1866, defendants wrote a letter to plaintiff requesting her to call upon them, in reference to her account, on the 8th instant. She called at the time specified and was informed that defendants' firm was about dissolving, and that they desired to know with which of the firm she desired to have her account left. The referee held that the defendants had no right to sell without first calling upon the plaintiff for further marginal security, and held that she was entitled to recover of them the balance of her money in their hands, excluding from the accounts the stocks in question. Other facts, so far as important, appear in the opinion.

*Wm. Henry Anthon* tor the appellants. The fact that the specific stock purchased under the agreement had been sold by defendants, after they supposed the agreement to have terminated, is not material. (*Barton* v. *Morgan*, 19 N. Y., 170 ; *Nourse* v. *Prince*, 4 J. Ch., 490.) The payment by plaintiff of the balance due on the account, there being no error or mistake, was a final settlement. (*Lockwood* v. *Thomas*, 1 Kern., 170 ; S. C., 18 N. Y., 286.). Courts will not encourage the opening of an account which the parties themselves have settled. (*McIntyre* v. *Warren*, 3 Keyes, 262.)

*Joshua H. Van Cott* for the respondent. Plaintiff's settlement of defendants' account was by compulsion, and does not bar her from making further claims. (19 Wend., 24 ; *Harmony* v. *Bingham*, 1 Duer, 229 ; *Ashley* v. *Reynolds*, 2 Strange, 16 ; *Collins* v. *Westbury*, 2 Bay's, 212.)

EARL, C. The stocks in question were purchased by the defendants, for the plaintiff, under the agreement embodied in the instrument signed by her and delivered to them, dated November 28, 1864. Under this agreement the relation of

pledgor and pledgee existed between the plaintiff and defendants as to all stocks purchased, they holding a lien upon the stocks for any advances made. It was so decided in *Markham* v. *Jaudon* (41 N. Y.. 235), and in *Morgan* v. *Jaudon* (40 Howard's Pr. Rep., 366). Under this agreement the defendants were not obliged to carry the stocks indefinitely. Whenever they desired to close the transaction in reference to any stocks, it was their duty to tender the certificates thereof to the plaintiff and demand payment for them; then, if within a reasonable time she did not take and pay for the stocks, they had a right to sell them to satisfy their lien, after first giving her notice of the time and place of sale. There was only one contingency in which they could, under the agreement, sell the stock without notice, and that was, if the plaintiff's margin fell below twenty per cent and she failed, upon demand, to make the margin good; then, by the express stipulation in the agreement, they could sell without notice. Here no demand was made for more margin, and hence there was no right to sell on account of the insufficiency of the margin; and there was no tender of the stock, and no demand that the plaintiff should pay for the same; and hence the defendants had no right to sell for the purpose of closing their accounts with her. The sale of the stocks was, therefore, wrongful and unauthorized, and rendered the defendants liable to the plaintiff for such damage as the rules of law entitled her to.

But it is claimed that the parties settled before the commencement of this action, and that the plaintiff voluntarily paid the defendants the balance due them upon an account stated, and hence that she could not rightfully recover in this action. This claim must now be examined.

On the 11th day of January, 1866, the defendants made the wrongful sale of the stocks, and notified the plaintiff of it. On the 14th day of January they made up her account with them in reference to her deposits, and the purchase and sale of these stocks, showing a small balance due them, and leaving in their hands, as security for such balance, two United

States bonds for $500 each.  Soon thereafter, the plaintiff called upon the defendants and complained of the manner in which she had been treated by the sale of the stocks, and also pointed out some small errors in the account as to items of credit to her which had been omitted.  The defendants, soon thereafter, rendered a corrected account, showing a balance due them of $169.88, still holding the two United States bonds as security therefor ; and they wrote her several letters stating that unless she paid this balance they would sell her bonds. Finally, on the 28th day of January, she being in ill health and her husband having met with a serious accident, needing her attention, and she having pressing need for her two bonds, wrote to the defendants informing them of these facts, and sent her letter, with the balance, to them by a messenger, who paid it to them and received from them the two bonds and delivered them to her.  Upon all these facts the referee found that she did not acquiesce in or assent to the account as to the sale of her bonds, and that she was not concluded by the payment of the balance as a voluntary payment ; and in this finding I do not believe that he erred.

It is true that an account stated is conclusive upon the parties to it, unless impeached for fraud or mistake. But what is an account stated ?  It takes two parties to make one, the debtor and creditor.  There must be a mutual agreement between them as to the allowance and disallowance of the respective claims, and as to the balance as it is struck upon the final adjustment of the whole account and demands of both sides.  Their minds must meet as in making other agreements, and they must both assent to the account and the balance as correct.  But this agreement and assent need not be direct and express, but may be implied from circumstances.  If one party presents his account to the other and the latter makes no objection, it may well be inferred that he is satisfied with and assents to it as correct. If an account be made up and transmitted by one party to the other by mail, and the latter keeps it for some considerable time without making any objection, he is held to have

acquiesced in it. But in all cases there must be proof, in some form, of an express or implied assent to the account rendered by one party to another, before the latter can be held to be so far concluded that he can impeach it only for fraud or mistake. (*Lockwood* v. *Thorne,* 11 N. Y., 170; S. C., 18 id., 290.) Here there is sufficient proof to authorize the finding of the referee that the plaintiff did not assent to the account as rendered, so far as related to the purchase and sale of the stocks, as correct. She claimed that the sale of her stock was unauthorized and wrongful, and the referee was justified upon the proof in finding that she did not intend at any time to release the defendants from any damage which they had occasioned her.

Great stress, however, is laid upon the payment by the plaintiff of the balance shown by the account, as rendered, to be due from her. This payment was in one sense voluntary, as she was not compelled by physical duress to pay it. But the defendants held her two bonds, which they threatened at once to sell unless she would pay this balance. She had great need for the bonds and could not well wait for the slow process of the law to restore them to her, and she paid this balance, not assenting to the account and not assenting that it was justly due, for the sole purpose of releasing her bonds. Under such circumstances it is well settled that the law does not regard a payment as voluntary. It was well said by Judge RUGGLES, in *Harmony* v. *Bingham* (12 N. Y., 117), that "if a party has in his possession goods or other property belonging to another and refuses to deliver such property to that other unless the latter pays him a sum of money which he has no right to receive, and the latter, in order to obtain possession of his property, pays that sum, the money so paid is a payment by compulsion." In such case the payment is procured by duress of goods, and is no more voluntary in the eye of the law than if procured by duress of the person.

The rule of damages adopted by the referee was doubtless erroneous. He awarded to the plaintiff the amount of all the

moneys deposited with the defendants, throwing out of the account all pertaining to the stocks and treating them as if they had been purchased and sold on account of the defendants. But no complaint by exception or otherwise was made of the rule at the trial, and hence none can be made here.

It follows, from these views, that the judgment must be affirmed, with costs.

REYNOLDS, C. The agreement or written order, upon which the account with the plaintiff was opened by the defendants for the purchase and sale of stock on her account, is very explicit in its terms, and the rights and obligations of the parties under it entirely apparent. The plaintiff was never put in default for not providing the margins required by the contract, and the sale of the stocks by the defendants, complained of in this action, was made without notice to the plaintiff in any form that she was required to furnish more money, or that the stocks were to be sold.

It is entirely true that the agreement under which the account was opened might be determined at any time by either party, but this could not be done except upon reasonable notice. Neither party was at liberty, by a secret emotion of mind, to rescind the contract and then proceed to sacrifice or impair the interests of the other without in some form disclosing the determination to close the account. This, I think, the defendants undertook to do in a somewhat arbitrary manner, and it seems very proper that they should respond to the plaintiff for such damages as, by their wrongful action, she has sustained.

It is urged that the defendants' letter of the 6th of January, 1866, placed the plaintiff in default, but I have been unable to discover it. It simply says that, in consideration of her account with the defendants, she was requested to call at the defendants' office on Monday, the eighth, at any time that should suit her convenience. It gave no intimation of a determination to close the plaintiff's account. She called in pursuance of the request, saw the defendants' book-keeper,

and was advised that the firm of the defendants was going into liquidation, and that new combinations were to be formed, and she was desired to indicate to which of the new firms her account should be transferred. There was not then, so far as I can discover, any intimation that her account was to be closed, or that her stocks then on hand were to be sold. Yet, without further notice they, or some of them were, on the eleventh of January, three days after, sold at a sacrifice. I can find no possible excuse in law or morals for the conduct of the defendants.

On or about the thirteenth of January the defendants made out and sent to the plaintiff an account current. On the seventeenth of January some errors in the account current were admitted, and, a small balance appearing against her, the plaintiff was admonished to call and settle or the defendants would be " obliged, unwillingly, to close out the stock we hold against the above balance at your debit" ($170.03). It would seem to be implied from this that the sale of the Fort Wayne, Rock Island and Reading stock, on the 11th of January, 1866, did not in fact, and was not intended to close the plaintiff's account, for the defendants still held securities for the small balance of $170.03, which, in value, greatly exceeded this amount, and which they threatened to sell unless the balance was immediately adjusted. It is to be observed that this balance was produced by charging the plaintiff with all the· loss upon her stocks wrongfully sold by the defendants on the eleventh of January. After some correspondence the plain-- tiff paid the balance of the account insisted on, and received from the defendants such securities as they held for its pay-- ment. It is now claimed that this payment of the balance was· such a final settlement as precludes the plaintiff from recovering damages for the wrongful sale on the eleventh of January. To this we do not agree. The plaintiff had the right to rescue her property from the perils that seemed impending, even by the payment of a sum wrongfully exacted. Even if this were an action to recover back that money, I think it should be sustained. (*Astley* v. *Reynolds*, 2 Strange, 915 ;

*Harmony* v. *Bingham*, 12 N. Y., 99, 109 ; *Tutt* v. *Ide et al.*, 3 Blatchford, 249.) But this is not the cause of action. It is for the damages resulting from the wrongful sale of the plaintiff's stocks on the eleventh of January. That cause of action existed when the plaintiff exchanged a smaller amount of money, upon the defendants' demand, than the value of the security held for its payment. This did not in any way affect the claim of the plaintiff in this action. It is a principle as old as the common law, that a cause of action once vested can only be discharged by a release under seal, or the receipt of something in satisfaction. (*McKnight* v. *Dunlop*, 5 N. Y., 544, and cases cited.)

The case of *Markham* v. *Jaudon* (41 N. Y., 236) is, upon the main question, entirely conclusive against the defendants, and the judgment should be affirmed with costs.

All concur.

Judgment affirmed.