(71 App. Div. 62.)

RAND v. WHIPPLE et al.

(Supreme Court, Appellate Division, First Department. April 11, 1902.)

1 TRUST — PURCHASE OF STOCKS — EVIDENCE—ACCOUNT STATED—RELIEF IN EQUITY—ACCOUNTING.

Two brothers, owning most of the stock of a corporation, desired to purchase the balance. One effected the purchase, paying for the stock, and taking an assignment in his own name. The corporation officer who negotiated the purchase, and who had confidential relations with both

brothers, testified that the purchaser told him they wished to put this stock in between them, and to go and buy it. Four years later the purchaser directed the witness to prepare a statement of account, charging the brother with the amount paid for his share of the outstanding stock, with interest, and crediting him with dividends thereon, and the purchaser examined the account so prepared, and indorsed it "Approved," signing his name, with the date. The account was forwarded to the brother, who in a letter accepted it as correct, and directed the witness to have the stock transferred to him. Two subsequent statements of account were made on the same basis, one being in the purchaser's handwriting. *Held*, that the evidence disclosed an account stated establishing a trust, and rendering the executor of the purchaser liable to account in equity, and to assign to the assignee of the brother his proportionate part of the stock.

2. Same—Statement of Account—Acceptance as Correct.

Where, on an issue as to whether corporate stocks were purchased for another and held in trust as security for the amount paid therefor, a statement of account, prepared by the purchaser, charging the beneficiary with the purchase price and interest, and crediting him with dividends since the purchase, was sent to the beneficiary, his letter acknowledging the receipt of the statement, and accepting it as correct, is admissible.

Appeal from special term, New York county.

Action by Jasper R. Rand against George E. Whipple and another, as executors of the will of Addison C. Rand, deceased. From a judgment for defendants, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, INGRAHAM, and LAUGHLIN, JJ.

David Wilcox, for appellant.
Charles F. Brown, for respondents.

INGRAHAM, J. The object of this action was to recover from the defendants, as the executors of Addison C. Rand, 300 shares of the stock of the Rand Drill Company, a domestic corporation, which it is alleged the defendants' testator purchased on account of Jasper R. Rand, from whose executors the plaintiff received a transfer of the right to recover this stock. The complaint alleges that on or about the 14th day of August, 1884, the said Addison C. Rand and Jasper R. Rand agreed to purchase, and did purchase, for their joint account and benefit, 500 shares of the capital stock of the said corporation, for the sum of $62,500; that the purchase money for the said stock was furnished by Addison C. Rand, who subsequently sold 100 shares to one Clinton Stephens, and the remaining 400 shares were transferred to Addison C. Rand, and remained in his possession up to the time of his death, he holding the title to the stock as security for the amount of the purchase money that he paid therefor, and that it was subsequently agreed between the parties that Jasper R. Rand should receive 300 shares and Addison C. Rand 100 shares, and that an account as of January 1, 1898, was made up and stated between them, showing the balance then due from the said Addison C. Rand to Jasper R. Rand on account of the said 300 shares to be the sum of $10,645.49; that the defendant Addison C. Rand died on the 9th day of March, 1900, and the defendants were duly appointed his executors; that Jasper R. Rand died on the 19th of July, 1900, from whose executors the plaintiff has received a transfer of the said stock and his right to re-

cover the same. It is further alleged that the said stock is of great value, and is owned by a few persons immediately connected with the said corporation; and that the same cannot be purchased in the market, and has no market value; and the plaintiff asks for an accounting to determine the amount due to Addison C. Rand on account of the said stock, and, upon the payment of the amount due thereon, for the transfer of the stock to the plaintiff. The court below found that the plaintiff had not established that the certificate for the 400 shares of stock was delivered to or held by Addison C. Rand as security for the repayment by Jasper R. Rand to him of any portion of the purchase price of said 500 shares of stock; that the plaintiff had not established that, at a time subsequent to the purchase of the said 500 shares of stock, it was agreed between the said Addison C. Rand and Jasper R. Rand that said 400 shares of stock should be divided, and that said Jasper R. Rand should receive 300 of said shares, and Addison C. Rand 100 of said shares, or that at any time any agreement for a division of said stock was made between Addison C. and Jasper R. Rand. The main question on this appeal is whether upon all the proof there was such a decided preponderance of evidence that the finding of the trial judge should be set aside. Prior to the purchase of the stock in question the total stock of the company was 2,500, of which Addison C. Rand held 1,090 shares, Jasper R. Rand 670 shares, and a Mrs. Annabel 500 shares, and the remainder was held in small lots by several stockholders. For two or three years prior to the year 1894 there were several discussions as to the purchase of the 500 shares belonging to Mrs. Annabel. A Mr. Brainerd, who was an officer of the company, and who seems to have been in confidential relations with both Addison and Jasper Rand, had several conversations with Addison C. Rand in regard to the purchase of this stock. Addison told Brainerd that he desired to put this stock in "between him and his brother, and divide up a portion of it among the employés of the company." In 1894 the witness had a conversation with Addison C. Rand, who told him that, if he could purchase the stock, to go and purchase it. The witness then entered into negotiations for the purchase of the stock, which lasted several months, and finally obtained from Mrs. Annabel a price for which she was willing to sell, viz., $125 a share in cash. Addison C. Rand then said to the witness: "We want to buy this stock, and you go and buy it;" whereupon Brainerd sent a Mr. Stephens, also connected with the company, and directed him to go and purchase the stock. Mr. Addison C. Rand then came from Dansville, where he and his brother were staying at a sanitarium, went to a bank in New York, obtained a loan from the bank of $50,000, borrowed $10,000 from Mr. Stephens, and gave Stephens $2,500 in cash, with which the latter purchased the stock. After the certificate was purchased, it was brought to Brainerd, who made out a new certificate in the name of Stephens, which Brainerd retained, putting it in a private drawer in the safe. Subsequently this certificate was retired, and a new certificate issued to Stephens for 100 shares of stock, for which Stephens canceled the loan that he had made to Addison C. Rand of $10,000, and paid the balance of the purchase price for this 100 shares to Mr. Rand in cash; and a certificate for 400 shares, be-

ing the balance of the 500 shares after deducting the 100 shares sold to Stephens, was taken in the name of Addison C. Rand. This was done by the direction of Jasper R. Rand during Addison C. Rand's absence, and the certificate remained in that condition until the death of Addison C. Rand, when it was delivered to his executors. Mr. Brainerd, while an officer of the company, also seems to have transacted the private business of these brothers, and, as they together owned a large majority of the stock of the company, all of their business transactions seem to have been conducted at the office of the company, and by its employés, who attended to their affairs. Subsequent to the 25th day of June, 1895, Addison C. Rand directed Brainerd to make out a statement of the accounts between himself and his brother. In this account Addison C. Rand instructed Brainerd to charge Jasper R. Rand with the purchase price paid for 300 shares of the 500 shares of stock purchased from Mrs. Annabel, viz., $125 a share, and charge him interest on that account from the date of the purchase. Brainerd was also to charge Jasper R. Rand with $5,000, a loan that had been made by Addison to Jasper prior to that time, and interest thereon, and was directed to credit Jasper with a sum of money which would equalize the salaries that these two brothers had received as officers of the company for 15 years prior to the date of making out the account, it appearing that Addison had received a larger salary from the company than Jasper had received, and this credit was to equalize the excess of salary that had been received by Addison, so that as between themselves each of the brothers should have received from the company an equal salary. In pursuance of these instructions Brainerd made out this account, and the same was offered in evidence. It charged Jasper R. Rand with the purchase price of 300 shares of stock, which cost $37,000 and interest to carry the same to January 1, 1898, at 4 per cent., amounting to $5,070.83, and the amount of the $5,000 loan, with interest thereon to January 1, 1898, making a total charge of $48,287.49. There were credited the dividends received upon these 300 shares of stock from August 14, 1894, to the date of the account, and also the sum of $15,000 to equalize salaries to January 1, 1898, leaving a balance due on January 1, 1898, from Jasper R. Rand to Addison C. Rand of $10,645.49. At the foot of this account there was a continuance thereof to the 1st of January, 1899. Jasper was there credited with the dividends during the year 1898 on 970 and 960 shares of stock, which included these 300 shares, and charged with the balance of his account on January 1, 1898, leaving a balance to Jasper's debit on the 1st day of January, 1899, of $961.86. At the bottom of this account there is in Addison C. Rand's handwriting the following: "Approved Jan. 4, '99. Addison C. Rand." In crediting the dividends for the year 1899, Jasper R. Rand is credited with a dividend of 10 per cent. on 970 shares, and 5 per cent. on 960 shares. At the time this first dividend was declared there stood in Jasper R. Rand's name upon the books of the company but 670 shares of stock, and at the time the 5 per cent. dividend was declared there stood in his name on the books of the company 660 shares, so that the credit of dividends, if proper, necessarily included the 300 shares of stock which had been purchased from Mrs. Annabel, and stood in Addison

C. Rand's name. The correctness of this account depended upon the ownership by Jasper R. Rand of this 300 shares of stock, the purchase price of which had been charged to him in the account, but which stock then stood on the books of the company in the name of Addison C. Rand. There. was also upon this account some pencil memorandum in the handwriting of Jasper R. Rand. After Brainerd made up the account he sent one copy of it to Addison C. Rand and one to Jasper R. Rand. He subsequently had a conversation with Addison in regard to the accounts. Brainerd testified that Addison told him that the statement was correct so far as he knew, and if the figuring was correct it was satisfactory to him, and if it was satisfactory to Jasper R. Rand to settle on that basis to settle with Jasper according to that statement, if it was satisfactory to him, by transferring the stock and taking a check from J. R. Rand for the balance, which was due according to the statement; that the witness subsequently received a letter from Jasper R. Rand, which was offered in evidence, but which was excluded by the court. This letter is printed in the record. Its exclusion was clearly error, and the letter was competent as an acceptance by Jasper of the account as prepared by Addison's directions, which was a statement of the accounts between Addison and Jasper, with the striking of a balance due from Jasper to Addison. That letter is as follows:

"As to my account with A. C.,—the stock account,—I wish you would get that fixed up according to your statement sent me. Have the three hundred (300) shares transferred to me. * * *"

Jasper R. Rand also wrote Brainerd another letter, dated March 7, 1900, which was produced by Brainerd, and offered in evidence, but excluded by the court. This letter was also admissible, as showing the settlement of the accounts between the brothers. It was an acceptance of the account, and a direction to have the stock transferred to Jasper R. Rand. Brainerd also made another account between the brothers up to January 1, 1900, under the directions of Addison C. Rand, and this account was also sent to both of the brothers, and contained substantially the same charges and credits contained in the account made up to January 1, 1898, with additional credits and charges down to the 1st of January, 1900, and this account shows a balance due from Jasper to Addison of $1,013.84. There were two other papers produced, both in the handwriting of Addison. An account in the handwriting of Addison was also produced, charging Jasper with 300 shares of stock, $37,500, and containing other items of interest and dividends. There was also another paper produced in the handwriting of Addison C. Rand, containing a statement that "J. R. will have 970 shares, which will pay dividend of 40%,—$38,800." None of this evidence was disputed, nor was there the slightest reason to doubt its correctness. Both of the brothers are since dead, Jasper surviving Addison but a few months. Addison left a will making Jasper executor, and Jasper acted in that capacity during the few months that he survived his brother.

It is difficult to see how, upon these facts, there could be any doubt as to the conditions under which this stock was purchased. Before it was purchased Addison expressly stated to Brainerd, who

conducted the negotiations, that it was to be purchased by himself and his brother. It was a joint purchase of the stock. Considering the relations that existed between these brothers, and that at the time of the purchase both of them were in a sanitarium some distance from New York, the fact that one brother came to New York to complete the purchase, and that the money which was used for that purpose was borrowed in the name of one brother rather than in the name of both, is not at all inconsistent with the fact that the stock was purchased, as Addison declared it was to be purchased, for their joint account. The subsequent transaction strongly confirms this conclusion. Mr. Brainerd and Mr. Stephens, the trusted employé of the company, which was largely owned by the brothers, made the arrangement for purchasing the stock, and, it would appear, determined in whose name the certificate should be taken. After Mr. Stephens purchased 100 shares, and a certificate for that amount of stock was delivered to him, a new certificate was taken out for 400 shares in the name of Addison by Jasper's direction, he assuming to control at that time the disposition to be made of this 400 shares; and when the accounts between the brothers were made up, at Addison's direction, Jasper was charged with the purchase price of 300 shares of the stock, and charged with interest on such purchase price down to the date of the making up of the account. The approval of that account by Addison was certainly a statement of the account as made up, and was an admission by him that the 300 shares, the purchase price of which was charged to Jasper, had been purchased for Jasper's account and belonged to him. And that the settlement between the brothers was a statement of the account, based upon the fact that Jasper was the owner of 300 shares and was properly chargeable with the purchase price thereof, with interest thereon, seems to me to be the only conclusion to be drawn from this evidence. The essentials necessary to constitute an account stated are set forth in Lockwood v. Thorne, 18 N. Y. 285. It was there held that in stating an account two things are necessary:

"(1) That there be a mutual examination of the claims of each other by the parties; and (2) that there be a mutual agreement between them as to the correctness of the allowance and disallowance of the respective claims, and of the balance, as it is struck upon the final adjustment of the whole account and demands on both sides."

In speaking of the proof necessary to show these essentials to the statement of an account the court say:

"But in proving an account stated it is not necessary to show an express examination of the respective demands or claims of the parties, or an express agreement to the final adjustment. All this may be implied from circumstances."

In Stenton v. Jerome, 54 N. Y. 484, Judge Earl in delivering the opinion of the court says:

"But what is an account stated? It takes two parties to make one,—the debtor and creditor. There must be a mutual agreement between them as to the allowance and disallowance of the respective claims, and as to the balance as it is struck upon the final adjustment of the whole account and demands of both sides. Their minds must meet as in other agreements, and they must both assent to the account and the balance as correct. But this

agreement and assent need not be direct and express, but may be implied from circumstances."

Within the rule thus established it seems to us clear, upon this undisputed testimony, that there was an account stated between the brothers, and a balance found due from Jasper for which Addison had a right of action against Jasper. The account was made up under Addison's directions. After it was made up it received his approval in writing. It was directed to be sent to his brother, the other party to the account, and, if satisfactory to him, that the accounts between them be settled upon that basis. It was received by Jasper as a statement of the accounts between the brothers, was accepted by him as correct, and Addison's agent, who made up the account and acted in transmitting it to Jasper, received from Jasper instructions to settle the accounts between them upon that basis. Now, the basis of this account was the fact that this 300 shares of stock which had been purchased by Addison and paid for by him had been purchased on Jasper's account and was his property. The amount that Addison paid for this stock was charged as an obligation of Jasper to Addison, and the account was made up upon that basis; and, if this was a stated account by which Jasper became indebted to Addison in the amount of the purchase price of this stock, it followed that the stock was the property of Jasper, and upon the payment of the balance due upon that account he would be entitled to the stock. An account stated, in the absence of fraud or mistake, of which there is no allegation and not a particle of evidence in the case at bar, is conclusive upon both parties; and, being conclusive upon Addison and Jasper, it would seem to follow that the stock for which Jasper had paid the purchase price in the settlement of this account was the property of Jasper. This statement of the account, made up by Addison's directions and approved by him, is also an admission by Addison, competent, as against his executors, to prove that when he purchased this stock he purchased it for Jasper's account. In Govin v. De Miranda, 140 N. Y. 474, 35 N. E. 626, there was found in the safe of the defendant's testator a declaration in writing that there was in the safe a parcel containing certain railroad bonds belonging to the plaintiffs, and it was held that this was a declaration sufficient to sustain an action brought by the persons named in the instrument as the owners of the bonds to recover the same. In Gallagher v. Brewster, 153 N. Y. 368, 47 N. E. 450, Brewster's executors found among his papers a direction to his executors as follows: "You will pay Philip E. Gallagher five hundred ($500.00) dollars. I owe him that. He is my old friend, and may be too modest to put in a claim." The referee before whom this claim was tried found against the claim, which was affirmed by the appellate division. 36 N. Y. Supp. 1081. In reversing that decision, Chief Judge Andrews said:

"The referee refused to give any force to the memorandum, either as an obligation or as constituting an admission by the decedent of any liability to the claimant. He held that it did not create an obligation, because it was never delivered, and that it could not be regarded as an admission, because the decedent retained it in his possession. He was clearly right upon the first question, but erred in respect to the second. It was an admission of a legal enforceable liability to the claimant for the sum stated therein.

As an admission it was competent evidence, although the testator retained it in his possession."

In this case we have the undisputed evidence of the declaration of Addison that the stock was purchased for the account of Jasper. We have, further, the two accounts charging Jasper with the purchase money paid for the stock, made under the direction of Addison, one of them approved in writing by him, upon which he directed that his accounts with Jasper be settled, and which accounts were approved by Jasper, without a particle of evidence to question the correctness of this accounting, or of the declaration made by Addison. It is quite clear that this could not be sustained as a gift of the stock by Addison to Jasper. But it seems to me equally clear on his evidence that Addison acted as an agent or representative of Jasper in the purchase of this 300 shares of stock, and that, upon the payment of the amount due from Jasper to Addison, Jasper, or his personal representatives after his death, were entitled to the stock. Upon this appeal it is not necessary to determine just what, if anything, is due to the estate of Addison from the estate of Jasper. The judgment asked for is an accounting as to the amount, if any, which was due to Addison from Jasper on account of the purchase price of this stock, and the question as to whether or not there was anything due should be left to be determined upon that accounting. But it seems to us that the evidence is overwhelming in favor of the position taken by the plaintiff that this 300 shares of stock were purchased by Addison for Jasper, and that upon the settlement of the account between Addison and Jasper, and the payment of anything due by Jasper to Addison at the time of his death, the personal representatives of Jasper, or the plaintiff as their assignee, would be entitled to the possession of this stock.

It follows that the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.