(39 Misc. Rep. 712.)

### TUELL v. PAINE et al.

(Supreme Court, Special Term, New York County. February, 1903.)

**1. STOCKBROKER—PURCHASE OF STOCKS—DUTIES.**
   Where a stockbroker is ordered to purchase certain stocks, it is his duty to purchase promptly, report the transaction to the purchaser, receive the stock, and have the certificates ready for delivery whenever the purchaser shall pay for them.

**2. SAME—LOSS—LIABILITY OF PURCHASER.**
   Where a stockbroker ordered to purchase stocks has rendered the customer an account, but has never purchased the same, he cannot, in a subsequent action for an accounting, charge him with the loss resulting from the sale.

**3. SAME—SALES ON MARGIN.**
   Where a stockbroker, being ordered to buy certain stocks, buys them on a margin, he cannot sell out the stocks when the margin is exhausted; unless the customer waives tender of them, demand of payment of balance due, and notice of broker's intent to sell.

**4. SAME.**
   Where a stockbroker, being ordered to purchase stocks, never purchases them, the customer is excused from demanding them.

Action by Joseph B. C. Tuell against John Overton Paine and others. Judgment for plaintiff.

Henry W. Hardon, for plaintiff.
Charles E. Travis, for defendants.

GILDERSLEEVE, J. This suit arises out of dealings between the plaintiff and the defendants, as, respectively, client and stockbrokers, and the relief sought is the opening and correction of two accounts rendered by the defendants to the plaintiff of stock transactions in April and May, 1901. By these accounts the defendants

brought the plaintiff in debt to them in $13,083.21 through the April transactions and in $3,779.88 through the May transactions. The plaintiff accepted the accounts as correct, and made no objection to them until the following October, when he disaffirmed all purchases of stock specified in the accounts as made for him between April 3 and May 10, 1901, on the ground that defendants never made those purchases, and never received any certificates of the stocks so reported to have been brought for his account. The question of laches was expressly waived by the defendants on the trial. The defendants claim that they bought the stocks in question through one Hayden, of Philadelphia; that plaintiff did not keep his margin good; and that when it became exhausted they sold the stocks for plaintiff's account at a loss, the amount of which they charged to him in the accounts here in question. Defendants also claim that plaintiff never demanded nor paid for the stocks which were so purchased for them. The complaint charges that the accounts were represented by the defendants to be "just and true," but that they were "false and fraudulent." In what respect they were fraudulent does not appear from the complaint, except, perhaps, by inference from the charge that they were false. Beyond this there is no evidence of fraud, and I shall not regard the case as proceeding for fraud and deceit, but simply for an accounting, and shall treat the allegation that the accounts were fraudulent as not characterizing the action, but as surplusage only. Conaughty v. Nichols, 42 N. Y. 83; Greentree v. Rosenstock, 61 N. Y. 583; Segelken v. Meyer, 94 N. Y. 473.

The relative rights and duties of the parties to this suit are easily determined by reference to familiar principles of law. It was the defendants' duty, upon receiving plaintiff's order to purchase the stocks for his account, to do so promptly, report the transaction to him, receive the stocks for him and have the certificates ready for delivery to him whenever he should call for them. Markham v. Jaudon, 41 N. Y. 235, 239; Douglas v. Carpenter, 17 App. Div. 329, 45 N. Y. Supp. 219. It is very clear from the evidence in this cause that the defendants never bought for the plaintiff the particular shares in question. The most they, perhaps, did was to give Mr. Hayden an order for them. Hayden never delivered the stock to defendants, and they never demanded it of him. The claim that they had this stock pledged with 99 per cent. of all their stocks, and could, if plaintiff had demanded it, obtained enough for delivery to him from the pledgees, or could have borrowed it, and thus been in a position to make the delivery within what they call a reasonable time, is not satisfactorily proved; but, if it were, it would be of no avail to them. If they really bought the stock for the plaintiff, it was his property from the moment it was purchased, subject, of course, to the payment of the purchase price (Dos P. Stock Br., 119; Markham v. Jaudon, 41 N. Y. 235, 240; Gruman v. Smith, 81 N. Y. 25, 28); and defendants were bound to have it ready for delivery immediately on plaintiff's demand. This is the law, and, as Mr. Burr testified, the custom of brokers. Mr. Burr's language on the stand was: "It [the stock] is held for the customer, and he [the broker] is obliged to deliver the stock to the customer at any time he asks for it. He must have it ready for

the customer at any moment." See cases cited, supra. Mr. Paine, one of the defendants, testified that, according to his understanding, the broker has a reasonable time in which to deliver securities to his customer, which he regarded as "about two weeks." Mr. Paine is not a member of the New York Stock Exchange, while Mr. Burr is; and he is also a member of its board of governors. But if Mr. Paine's view of the time allowed to brokers in which to deliver stock bought for a customer should accord with the custom, it is too unreasonable to obtain the sanction of the law. Evidence was given to show that by the rules of the Stock Exchange Clearing House a broker receives, on settlement, only the difference between the quantity of stock sold and the quantity bought by him; that is, if for several customers he buys 1,000 shares and sells 900 shares, he receives the difference between these two amounts, viz., 100 shares. That custom, however, cannot affect the relations between the broker and his customer. The latter is entitled to the stock which is bought for him, without regard to the rights of other customers. It would be a strange thing if a broker could excuse his failure to deliver to his customer stocks bought for him on the ground that at the clearing house his sales and purchases in a given case balanced each other, and that, therefore, he had no stock for his client. Holding, as I must, on the testimony, that the defendants did not purchase the stocks charged to the plaintiff in their accounts rendered, the plaintiff is not chargeable with any loss on the sale thereof, since the defendants could not sell for plaintiff's account stocks which they never received for him.

The defendants claim that they had the right, under their agreement with the plaintiff, to sell his securities when his margin was exhausted. The terms of this agreement do not appear, and, in the absence of a specific agreement on the part of the plaintiff waiving not only tender of the stock and demand of payment of the amount due the defendants, but also notice of their intention to sell his securities in default of such payment, with the time and place of sale, the sale was wrongful. Wilson v. Little, 2 N. Y. 443, 51 Am. Dec. 307; Markham v. Jaudon, supra; Stenton v. Jerome, 54 N. Y. 480, 483; Usher v. Van Vranken, 48 App. Div. 416, 63 N. Y. Supp. 104. No question of the plaintiff's duty to demand the stocks in question arises in the case. As the defendants had no stocks to deliver to the plaintiff, no demand by him was necessary.

The injunctive relief asked for in the complaint cannot be granted. It was not shown that defendants were insolvent, nor is this a proper case for that measure of relief. Park v. Musgrave, 2 Thomp. & C. 571. Judgment for the plaintiff that the account be settled in accordance with these views. Let findings or a decision be submitted.

Judgment for plaintiff.