Title Guarantee and Trust Company, Appellant, *v.* The City of New York, Respondent.

First Department, January 10, 1919.

Duress — when payment to city for permit to enlarge vault under pavement is made under duress — voluntary payment — mutual mistake of fact.

Where a corporation purchased premises in the city of New York appurtenant to which there was a two-story vault extending beneath the pavement, which had been constructed in connection with the building erected on the premises prior to the commencement of the keeping of records by the city of the granting of permits for such privileges, and being desirous of completing a new building on said premises within a year, necessitating the replacing of the walls of the old vault and enlarging the same, applied to the proper city authorities for a permit and offered to pay for the additional space desired, claiming that it was not chargeable for the space occupied by the old vaults, and was refused the permit unless it paid for the entire space to be occupied, and was also threatened

with arrest if it attempted to erect the vaults without first obtaining a permit therefor, and under protest and challenging the right of the city to require such payment, paid the sum required and thereafter, having made exhaustive investigation, established that the original vaults were duly obtained by its predecessors in title upon permits issued by the city upon payment of the required fees, it cannot be deemed to have made the payment to the city for the additional space voluntarily, and may recover such amount upon the ground that it was paid under legal duress.

Since the corporation at the time the money was paid to the city for the additional space was ignorant of the facts with reference to the granting of vault privileges to its predecessors in title, and since the officials representing the city were likewise uninformed, the moneys were paid under a mutual mistake of fact, so that even assuming that the payment was voluntarily made, the city has no right thereto.

APPEAL by the plaintiff, Title Guarantee and Trust Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 19th day of February, 1916, upon a dismissal of the complaint by direction of the court at the close of the case, and also from an order entered in said clerk's office on the 7th day of March, 1916, denying plaintiff's motion for a new trial made upon the minutes.

*Harold Swain* of counsel [*Edwin W. Cady* with him on the brief], for the appellant.

*William A. Walling* of counsel [*Terence Farley, Charles W. Miller* and *Harold N. Whitehouse* with him on the brief; *William P. Burr, Corporation Counsel*], for the respondent.

MERRELL, J.:

This is an appeal by the plaintiff from a judgment entered upon a nonsuit granted at the close of the evidence dismissing plaintiff's complaint upon the merits and from an order denying plaintiff's motion for a new trial.

The action was to recover the sum of $2,654.40 paid by plaintiff to defendant on June 20, 1905, for a permit to open the street at 176 Broadway, New York, for the purpose of removing and replacing the cover of a vault extending under said street.

The plaintiff, a corporation, acquired the premises at 176

First Department, January, 1919.          [Vol. 185.

Broadway by purchase on May 18, 1905. At that time plaintiff was the tenant of premises at 146 Broadway under a lease expiring in May, 1906. The property was purchased with the view of erecting thereon a business office building practically for the exclusive use of the plaintiff and its employees. The purchase price paid for the land was $960,000 and plaintiff planned to at once erect thereon a new building and have the same completed and ready for its occupation at the expiration of the lease which it then held. The new building was to be modern in every respect and involved an expenditure in its erection of $892,000. At the time plaintiff purchased the premises there was located thereon an old and somewhat dilapidated building. Appurtenant thereto a two-story vault extended beneath the pavement. The evidence discloses that this vault was constructed in connection with a building erected on the premises about the year 1839. Almost immediately upon acquiring title to the premises in question, plaintiff undertook the demolition of the old structure preparatory to the erection of its new building. Almost at the outset the question as to vault space arose. The plans adopted by plaintiff involved the construction of vaults beneath the pavement in front of and in connection with its new building, to the depth of three stories, to correspond with the substructure of the proposed building. This vault was to contain the heating, electrical and plumbing apparatus, and was a necessary part of the proposed structure. The existing vaults were but two stories in depth, and the walls were old and dilapidated and unsuitable for plaintiff's use, and it became necessary to replace the same. Plaintiff required for its new vaults a slightly greater area space than that occupied by the old vaults.

The space beneath the pavements, occupied by vaults of the character of these, is in the control of the city of New York, and for many years the city had been accustomed upon payment of prescribed fees, to grant privileges for the construction of such vaults in connection with buildings abutting on the streets of the city. The city has only kept a record of such privileges granted since about the year 1857. The department of public works has charge of such vault privileges through its permit bureau.

About the middle of May, 1905, plaintiff's architect and engineer called upon the official in charge of the permit bureau with reference to obtaining a permit for the opening of the street and the erection of new vaults covering a slightly greater area than those existing at the time. The architect made claim to the city official that the plaintiff should only be required to pay for additional space which it desired to use, and that it was not chargeable for the space occupied by the old vaults. The city official in the absence of any record showing payment for the old vault privilege when granted, required that the plaintiff pay for the entire area to be covered by the new vaults, without any deduction for the existing vault. At that time plaintiff's architect was informed by the city official upon whom he called, and who had charge of the issuance of the permits, that it would be impossible to attempt any opening of the street or the erection of any new vault, until a permit had been obtained. Plaintiff's representative was also informed that an order had been issued to the police department directing its policemen to forthwith arrest any person opening the street who could not produce a permit therefor. The city official of whom plaintiff's architect sought a permit upon payment merely for the additional space required by the new vaults, was fully aware of the fact that the old vaults appurtenant to the premises had existed long prior to the time when the city commenced to keep a record of such privileges granted. At the time of this interview with defendant's official, the old building upon the premises had been entirely torn down, and operations had reached a point where it became necessary to remove the old vaults in preparation for the new construction. Plaintiff, through its architect, persevered in its effort to obtain the desired permit upon payment of the sum for the additional space required, but such permit was withheld. Confronted with the necessity of immediate action in order to complete the building within the time limited, and upon the representations of the city of New York, through its officials, that prompt arrest of the plaintiff's agents and employees would follow any interference with the street or attempt to erect said vaults without first obtaining a permit therefor, plaintiff, on June twentieth, under a protest and challenging the right of the city to require such payment,

paid to the city the sum of $2,847.32 to cover the charges exacted for said vault privileges. At the same time plaintiff notified the commissioner of public works of the city of New York, in writing, that such payment was made under compulsion and because it was necessary to secure the vault permit without an unreasonable delay to the plaintiff in the construction of its said building, and that such payment was made under protest and without prejudice to any action or proceeding to recover the amount thus paid. Such payment was concededly made upon the ultimatum of the city, through the official in charge of its permit bureau, that such permit would not be granted, except upon such payment, and upon the threat then made, that if plaintiff started to open the sidewalk or touch the vaults, the arrest of its agents and employees would at once follow, and that the police department had instructions, upon communication from the permit bureau, to make arrests, if they saw any work being done without a permit, and as soon as the sidewalk or vaults were touched in any way. The official delivering such ultimatum was the person solely charged with authority to issue the desired permit. Upon such payment by plaintiff the necessary permit was issued, the construction of the building and vaults proceeded until the same were completed, and plaintiff was enabled to occupy its new quarters within the year.

Following the payment of said moneys, the plaintiff, feeling aggrieved, applied itself most assiduously toward discovering its rights in the premises. A most exhaustive investigation was had and a large amount of data obtained, showing conclusively that the original vaults upon the premises were duly obtained by plaintiff's predecessors in title upon permits issued by the city upon payment of the required fees. A period of several years was required to place plaintiff in possession of full information touching the authorization for the erection of such vaults as originally granted, and with reference to its rights in the premises.

Upon the trial the fruits of plaintiff's industry and research were spread upon the record, and demonstrated conclusively that the city of New York was without justification in demanding payment to it for so much of the privilege accorded plaintiff as was represented by the old vaults existing at the

time. It appeared from the testimony offered in behalf of the plaintiff that its predecessors in title had acquired such privilege upon due consideration, and that for the area covered by the old vaults the city had no authority to exact from plaintiff further payment. It was conceded upon the argument of this appeal by counsel for the defendant that, at the time the money was paid, the city of New York had no right to exact the same as a condition of issuing the permit; but the position of the city is that such payment was voluntarily made by the plaintiff, and that it cannot recover the same.

This action of the plaintiff is based upon the theory that it paid said moneys under compulsion and duress; that it had no alternative but to pay; and that a refusal to pay would have resulted in the arrest of any of plaintiff's agents who might attempt to prosecute the work; and would have prevented plaintiff's erection of its proposed building.

Upon stipulation of the parties a jury trial was waived in the court below, and the facts were submitted to the court, without a jury, for its determination. Upon motion of the defendant, and at the close of the evidence, the court granted defendant's motion for a nonsuit and dismissed plaintiff's complaint upon the ground that plaintiff had failed to establish a cause of action against the defendant. The learned trial court based such determination upon its conception that the payment by plaintiff to defendant was a voluntary one, and that the evidence did not show that the moneys were paid by plaintiff while under legal duress.

In such determination I think the learned trial court erred. The conceded facts show that said moneys were paid under compulsion and to avoid actual arrest. Not only had the plaintiff's agents been informed of defendant's refusal to issue the desired permit, except upon payment of the full rate covering the entire vaultage space, but they had been expressly told that if any attempt were made to interfere with the street or with existing conditions or with reference to the erection of new vaults, without first obtaining the required permit, arrests would follow forthwith, and that the police department of the city had received explicit directions to arrest any one attempting such work.

I think, under the authorities, the attitude and conduct of the city, through its officials, were sufficient to constitute duress, and that payment of the required fee made under the circumstances mentioned cannot be said to have been voluntary on plaintiff's part. (*Stenton* v. *Jerome*, 54 N. Y. 480; *Horner* v. *State of New York*, 42 App. Div. 430; *Buckley* v. *Mayor*, 30 id. 463.)

Plaintiff was given to understand by the attitude which defendant assumed that it could not proceed with its work or complete its proposed building, unless it first obtained the permit, and that the only means which it then had to obtain such permit was by payment of the required fee. Plaintiff, at the time, had no other alternative but to pay. None of the facts which, during the succeeding three or four years it was able to unearth, and which demonstrated conclusively that such fee was improperly exacted, was in the possession of the plaintiff at the time it made such payment, and, therefore, it was in no position to resort to any other legal remedy. In order to successfully invoke the aid of the courts in the enforcement of its rights, plaintiff was required to present a case showing that its rights in the premises were clear. This long research was required to discover plaintiff's rights, and the situation required prompt action.

At the time this money was paid, plaintiff was ignorant of the facts with reference to the granting by the city of vault privileges to its predecessors in title. The officials representing the city of New York were likewise uninformed. It is now conceded that there was no basis for the city exacting from plaintiff the payment of the moneys in dispute. These moneys were paid under a mutual mistake of fact, and even assuming that such payment was voluntarily made, having been made under mutual mistake, the defendant has no claim thereto, and plaintiff may legally recover the same. It is quite immaterial, it seems to me, whether the moneys were paid by the plaintiff while under legal duress, or were paid under a mutual mistake of fact. In either event, defendant has no just claim thereto, and should pay back what it unlawfully took.

The facts in the case are undisputed and show that plaintiff, for the privilege which it obtained, overpaid the defendant

in the sum of $2,654.40, that sum being moneys paid for the area covered by the old vaults.

The judgment and order appealed from should be reversed, with costs, and plaintiff should have judgment against defendant, the city of New York, for the sum of $2,654.40, together with interest thereon from June 20, 1905, the date when said moneys were paid, together with the costs of the action.

CLARKE, P. J., LAUGHLIN, PAGE and SHEARN, JJ., concurred.

Judgment and order reversed, with costs, and judgment directed for plaintiff for the sum of $2,654.40, with interest from June 20, 1905, and costs.