In the Matter of the Estate of JAMES COX BRADY, Deceased.
(Claim of LYTTLETON FOX.)

Surrogate's Court, Albany County, February 23, 1929.

PETITION by executors for determination of claim against the estate.

*Neile F. Towner*, for the executors, petitioners.

*Cooper, Erving & Savage*, for the claimant Lyttleton Fox.

*Edward J. O'Connell*, special guardian.

SCHENCK, S.   This proceeding has been instituted by petition of the executors of decedent's estate for the purpose of having determined at this time the claim of Lyttleton Fox, which at the date of decedent's death, November 10, 1927, amounted to $51,513.37.

The petition sets forth that decedent during his lifetime carried for the account of claimant certain shares of stock, which were sold prior to decedent's death at a profit and it is the sum representing this profit that the executors believe belongs to said claimant and should be turned over to him.   There are a number of claims of a more or less similar nature set forth in the petition, but since by stipulation and order entered herein the same are to be deemed separate proceedings and separately decided, we are only here concerned with the Lyttleton Fox claim.

All of the claims set forth in the petition herein and in the several proceedings brought on by other petitions of the executors amount

in the aggregate to several hundred thousand dollars in cash and securities, which the executors allege belong to and should be paid or delivered to the several claimants, and it would seem quite essential that there be a judicial determinatuon of these claims at this time in order that the estate may be properly administered and the transfer tax and Federal estate tax determined.

The special guardian, in the interest of the infant beneficiaries under testator's will, has filed objections to the payment of the various claims.

From the evidence offered at the several hearings, it appears that James Cox Brady, the decedent herein, a man of great wealth and active in the financing and operation of many large corporations, was the owner and holder of a very considerable amount of capital stock of the Chrysler Corporation. On or about August 29, 1925, decedent instructed Frank Bassett, his confidential bookkeeper in charge of his accounts, including those relating to his various stock transactions, to charge Mr. Fox, the claimant herein, with 2,000 shares of old Chrysler stock at $144 per share, which was about the market price at that time.

Pursuant to these instructions, Mr. Bassett opened an account on the records in decedent's office wherein Mr. Fox was charged $144 a share for 2,000 shares of old Chrysler stock, or $288,000. There was no consideration paid for this stock at that time, nor was decedent a stockbroker in the accepted sense of the word. He did, however, own considerably more than the 2,000 shares of old Chrysler set up in the account and charged to Mr. Fox. Interest was charged monthly, at brokers' interest rates, and added to the indebtedness and the account received in' evidence shows as of December 31, 1925, a total indebtedness from Mr. Fox to decedent of $293,362.33.

Thereafter, upon a recapitalization of the Chrysler Corporation, the original 2,000 shares charged to Mr. Fox were exchanged for 8,000 shares of the present Chrysler stock, which was subsequently carried in the account, interest being charged monthly, as before, and dividends paid to decedent being credited from time to time as received, so that as of March 31, 1927, the account shows Mr. Fox indebted to decedent in the sum of $282,850.79.

During the period covered by this transaction, Mr. Bassett, at the request of decedent, advised decedent from time to time as to the condition of the account.

On April 27, 1927, Mr. Bassett, at the request of Mr. Fox, delivered to the latter's brokers 2,000 shares, which were sold for $83,807.50, the decedent receiving $70,977.87, the price charged

to claimant in the account, the balance, representing the profit on the sale, being retained by claimant.

Instead of selling the remaining 6,000 shares in the market, decedent, through Mr. Bassett, offered to give claimant $43.76 a share therefor, that being the average price at which decedent had at about that time sold shares of the same stock, which offer was accepted by claimant and the sum of $262,562.99 was thereupon, at decedent's direction, credited on the account; so that as of April 27, 1927, the account showed a credit balance in favor of claimant of $50,125.77.

At decedent's direction, a typewritten statement of this account, showing this credit balance, was mailed to claimant with a letter signed by Mr. Bassett, setting forth that said statement was forwarded at the request of claimant. The letter and statement, which were shown to decedent by Mr. Bassett before mailing and which have been received in evidence over the objection of the special guardian, were received by claimant and apparently the statement was accepted and approved by him. Later, decedent instructed Mr. Bassett to give claimant a check for the credit balance, but claimant stated that he would rather let the amount remain to his credit as there might later be an opportunity to put it in some other investment.

The account set up on decedent's ledger shows a balance in favor of claimant of $50,125.77, on which interest at five per cent has been credited to November 10, 1927, the date of decedent's death, making a total of $51,513.37.

Clearly this transaction was completed during the lifetime of decedent and the account made up by Mr. Bassett and submitted to decedent and claimant constituted an account stated between decedent and claimant. (*Rand* v. *Whipple*, 71 App. Div. 62.)

It is true that no consideration was paid by claimant, who appears to have been an intimate friend of the deceased. Neither was there a delivery of these shares to claimant nor a transfer of the same to his name on the books of the corporation. The stock never left decedent's possession until the sale of the 2,000 shares in April, 1927, nor were the 8,000 shares segregated or set apart or otherwise earmarked in order that they might be identified as shares belonging to or carried for this particular account. Decedent's extensive holdings in Chrysler stock during the period covered by this transaction clearly indicates, however, that at all times during that period he had in his possession considerably more than 8,000 shares of this stock. These shares were carried in a street name and with other shares were deposited either in decedent's vault or with his brokers. But upon the undisputed

testimony in this proceeding, an account was made up under decedent's direction, showing the credit found to be due to claimant, which account being submitted to claimant and accepted by him established an account stated between the parties and a final basis of settlement of the transaction.

In *Lockwood* v. *Thorne* (18 N. Y. 285) the essentials necessary to constitute an account stated are set forth as follows: " In stating an account, two things are necessary: 1st. That there be a mutual examination of the claims of each other by the parties; and 2d. That there be a mutual agreement between them, as to the correctness of the allowance and disallowance of the respective claims, and of the balance, as it is struck upon the final adjustment of the whole account and demands on both sides. The minds of the parties must meet upon the allowance of each item or claim allowed, and upon the disallowance of each item or claim rejected. They must mutually concur upon the final adjustment, and nothing short of this in substance will fix and adjust their respective demands as an account stated.

" But in proving an account stated, it is not necessary to show an express examination of the respective demands or claims of the parties, or an express agreement to the final adjustment. All this may be implied from circumstances. If the account be rendered by one party, and the other party, upon examining it, makes no objection, an inference might legitimately be drawn that he was satisfied with it, as rendered. So, also, if the account should be made out by one party and transmitted to the other party by mail, and the latter should omit to communicate objections to the party rendering the account within a reasonable time, an inference might be drawn that he was satisfied with it. Such omission to object would therefore be legitimate evidence in proving an account stated."

In the present proceeding we have all the essentials of an account stated. The basis of the account was the fact that shares of stock owned by decedent were charged as an obligation of claimant to decedent, at a stated amount, which was about the then market price, and starting with the amount of this charge against the original 2,000 shares of old Chrysler stock the account was made up, interest being charged and dividends credited claimant. The statement of account made up by decedent's direction and approved by him is an admission that the stock was carried for claimant, even though there was no delivery. (*Matter of Gallagher*, 153 N. Y. 364, 368.)

The subsequent sale of 2,000 shares by Mr. Bassett for claimant's account and at claimant's direction is an acknowledgment of

decedent of claimant's interest and clearly implies that such transaction had his approval. (*Rand* v. *Whipple, supra; Stenton* v. *Jerome*, 54 N. Y. 480, 484.)

An account stated, in the absence of fraud or mistake, is conclusive upon both parties. Here there was no fraud and little or no chance for mistake, as the stock at all times had a market value. The transaction was completed during decedent's lifetime and on the undisputed evidence before me, decedent offered to pay claimant the balance standing to his credit in this account. That claimant did not accept payment at that time is of no importance.

The circumstances surrounding this transaction indicate a mutual understanding and agreement and that the balance struck has been assented to by both parties as being correct.

The claim is, therefore, allowed in the sum of $51,513.37 as of the date of decedent's death, and decree may be entered accordingly.